# Morse Boulger Destructor Company *v.* Arnoni, Appellant.

Argued October 8, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John A. Metz, Jr.,* with him *Metz & Metz* and *Irwin I. Tryon,* for appellants.

*Louis Artuso,* with him *B. Meredith Reid,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 11, 1954:

There are three appeals in this case, the appeal of Mariano C. Arnoni, the appeal of Caesar P. Arnoni, and the joint appeal of Mariano C. Arnoni and Caesar P. Arnoni. All appeals are from the order of the court below granting plaintiff's motion for a new trial after the court directed a verdict in favor of Caesar P. Arnoni and the jury had found a verdict in favor of Mariano C. Arnoni.

In February, 1947, suit was instituted by the plaintiff, a Delaware corporation, against Mariano C. Arnoni and his son, Caesar P. Arnoni, individually and

as partners trading under the name of M. C. Arnoni and Son.[1]  In November, 1946, defendant Mariano C. Arnoni retained one John F. Laboon as a consulting engineer for the proposed erection of a garbage and refuse incinerator in Snowden Township, Allegheny County, Pennsylvania.  Laboon prepared specifications for the construction of the incinerator, and sent copies thereof to prospective bidders.  The plaintiff corporation's bid of $105,600 was embodied in a letter sent by the plaintiff on February 12, 1947 to M. C. Arnoni and Sons.  At the bottom of the letter appeared the words "Dated" and "Accepted".  Following these words respectively are the date of "Feb. 13, 1947" and the signature of M. C. Arnoni.  The letter of February 12th lists certain changes from a sketch previously submitted by plaintiff to defendants, and then provides in the last paragraph: "It is understood and agreed that there are no other changes involved besides those outlined above.  The acceptance of this order is contingent upon a mutual agreement as to terms of payment, and the approval of same by the Morse Boulger Destructor Company credit department.".

On February 24, 1947 there was another letter from the plaintiff corporation to M. C. Arnoni & Sons which set forth additional modifications.  This letter provided in part: ". . . The modifications as included above shall be considered as a part of the contractual agreement of Feb. 12th as accepted by Mr. Arnoni on behalf of M. C. Arnoni & Sons and J. P. Beacom for the Morse Boulger Destructor Company. . . . Terms of payment —85% of the value of material delivered and work in place, or according to a payment schedule approved by

---

[1] In the trial of the case and in the evidence adduced the partnership was sometimes referred to as "M. C. Arnoni and Sons".  No issue arises in this regard.

Mr. Laboon and the final payment to be made within 30 days after the completion of the work of this contract.". At the bottom of this letter appears the following:

"Accepted for M. C. Arnoni & Sons
(Signed)   M. C. Arnoni
Accepted for Morse Boulger Destructor Company
(Signed)   T. J. Kelley & (Signed)   J. P. Beacom
Dated 2-25-47"

On March 4, 1947, Laboon sent a letter to plaintiff corporation in which he requested it to execute three copies of an enclosed formal agreement with the explanation that an agreement in such form was required for financing purposes. The three copies were executed by plaintiff and returned to defendants on March 13, 1947. Neither of the defendants ever executed or returned these formal agreements.

The factual issue presented was whether the letters of February 12, 1947 and February 24, 1947, each of which, as above appears, was addressed to M. C. Arnoni & Sons and accepted in writing by M. C. Arnoni, together were intended by the parties to constitute a complete contract.

Plaintiff introduced testimony by Thomas J. Kelley, vice-president and sales manager of the plaintiff corporation, and Patrick J. Beacom, its field representative, both of whom signed the letters on behalf of plaintiff, and also the testimony of John F. Laboon, the consulting engineer for the defendants, all of which was to the effect that it was intended and understood by all of the parties that upon the execution of the acceptance by M. C. Arnoni appearing on plaintiff's letter of February 24, 1947, the contract was finally and fully agreed upon. Mariano C. Arnoni and Caesar P. Arnoni testified that they had no intention to enter a binding contract until the plans and specifications

had been approved by the Commissioners of Allegheny County, and it was not until they were assured by Beacom that the contract was not binding that Mariano C. Arnoni affixed his signature to the letter of February 24th.

Laboon, Kelley and Beacom all testified that the final agreement was arrived at and accepted by Mariano C. Arnoni in Laboon's office in the City-County Building in Pittsburgh, and that those three and both Arnonis were present at that time. Mariano C. Arnoni testified that Kelley, Beacom and Laboon were present when he signed his acceptance upon the letter of February 24, 1947, as well as his son, Caesar P. Arnoni, and that he had no recollection of whether he signed the letter in the City-County Building or in Laboon's office in the Berger Building. Caesar P. Arnoni testified that at the time Mariano C. Arnoni's acceptance was noted on the letter of February 24, 1947, only he, his father and Beacom were present and that the meeting was in the Berger Building.

There was therefore a decided conflict in the testimony as to the place where the letter of February 24, 1947 was signed as accepted by M. C. Arnoni, the surrounding circumstances and the intention of the parties at that time. Laboon's testimony that following the events of February 24th and 25th, plaintiff proceeded to enter into subcontracts and order material was uncontradicted. Defendants admitted in the pleadings, and it was read into the testimony that certain materials were delivered on the site and refused by Mariano C. Arnoni on or about July, 1947.

In connection with the conflict in the testimony, it should be noted that John F. Laboon, whose testimony supported plaintiff's version, had been retained by the defendants as consulting engineer to be in charge of the construction of the garbage disposal plant. De-

fendants suggest no reason why the testimony of Laboon, who was acting on their behalf, was completely contrary in all material respects to their own testimony. Among other points of such conflict was the testimony concerning the financing of the project by the defendants. Both Arnonis testified that on February 25th, prior to the date Mariano C. Arnoni signed his acceptance on the letter of February 24th, there was a discussion concerning the financing of the construction and that the agreement was contingent upon their ability to obtain the necessary financing. Laboon testified that the question of financing first arose sometime in March.

Where there is an appeal from an order granting a new trial, the question before this Court is whether there has been a palpable abuse of discretion by the court below: *Gawron v. Levine,* 373 Pa. 384, 96 A. 2d 149. The presumption is that the grant of a new trial is justified even when the reason given therefor is insufficient, unless the Court expressly states it is the only reason: *Foster v. Waybright,* 367 Pa. 615, 80 A. 2d 801.

In the opinion of the lower court, four reasons were assigned for the grant of a new trial: (1) that the court erred in affirming defendants' 15th point for charge; (2) a remark made by one of the jurors as the jury retired for its deliberations; (3) in justice a new trial should be granted; and (4) "It is significant that Mr. Laboon, who was unquestionably the consulting engineer and the one who prepared the plans for the defendants, corroborated in practically every detail the contention of the plaintiff in this case, and his testimony clearly indicated a breach of the completed contract. In the opinion of the trial judge, Laboon's testimony clearly established that the exhibits heretofore referred to constituted a complete contract

by the parties, and we instructed the jury that the exhibits above referred to, if signed and agreed to by the parties, were sufficient and binding contract. However, the jury found for the defendants.". We shall consider these reasons seriatim.

(1) Defendants' 15th point for charge was as follows: "15. Under the law and evidence in this case the jury may find that the writings of February 12-13, 1947 (Plaintiff's Exhibit B) and February 24-25, 1947 (Plaintiff's Exhibit C) were merely an arrangement of terms in contemplation of a written contract and not a perfect agreement upon which an action can be maintained.". This point was simply an embodiment of defendants' theory of the case and merely a restatement of other points for charge properly affirmed by the trial judge without hesitation. An award of a new trial based solely upon this reason would be a palpable abuse of discretion.

(2) As the jury was leaving the court room to consider the case, one of the jurors made a remark substantially as follows: "I can't give a decision in this case; if I do; it is against my will.". The jury considered the case for approximately four hours and there is no evidence either that the original attitude of the juror who made the remark persisted, or that it had any bearing on the deliberations or verdict of the jury. Moreover, the trial judge called counsel for both parties to side bar and afforded either of them an opportunity to request a mistrial and both refused. We must therefore assume that both counsel considered the juror's remark to be harmless. Under such circumstances it can not provide the basis for a new trial.

(3) An award of a new trial may not be based solely on "the interest of justice". Where this is the only reason assigned for the grant of a new trial, this

Court is obliged to examine the entire record to determine whether any valid reason exists for disturbing the jury's verdict: *Beal v. Reading Company,* 370 Pa. 45, 87 A. 2d 214. However, where, in addition to a statement to the effect that in justice a new trial is required, it is clearly inferrible from the trial judge's discussion of the testimony that he justifiably considered the verdict to be against the weight of the evidence, an order requiring a new trial will not be disturbed: *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857. It is readily apparent from the words used by the trial judge following reason (4) above, that he considered the verdict to be against the weight of the evidence, although he did not expressly so state in his opinion. After an independent examination of the testimony in this case, we conclude that an order of a new trial was a justifiable exercise of discretion on the ground that the verdict was against the weight of the evidence.

Appellant Caesar P. Arnoni contends that there is no evidence in the record which established that he was a partner with his father or that there was in fact any partnership known as M. C. Arnoni & Son. Appellee contends that there is an admission in the testimony which is sufficient to establish the partnership. The record shows that when Mariano C. Arnoni was called by the plaintiff to testify as on cross-examination, he was confronted with an answer filed and signed by both defendants[2] in an earlier suit where it was admitted ". . . that they have for many years past kept, maintained and conducted a garbage disposal plant . . .". Previous to this time Mariano C. Arnoni had testified that there was no partnership and that Caesar was merely an employe. Defendants' answer

---

[2] The witness identified both signatures.

in the earlier trial was identified at the trial as plaintiff's Exhibit H. It was admitted under the following circumstances: "Mr. Artuso [counsel for plaintiff]: If the Court please, we offer in evidence at this time Plaintiff's Exhibit No. H. Mr. Metz [counsel for defendants]: For what purpose? Mr. Artuso: For the purpose of impeaching this witness.". While a prior admission may be used for the purpose of impeachment, there can be no doubt that an admission by one of the parties to a cause also constitutes substantive evidence: *Commonwealth, by Truscott et al. v. Binenstock,* 358 Pa. 644, 57 A. 2d 884. However, in the instant case the answer filed in the earlier case which had been signed by both defendants was offered by plaintiff's counsel only for the purpose of impeachment, and it was properly admitted for that purpose. The question is presented whether an admission offered for the purpose of impeaching a witness may also be considered as substantive evidence of the facts asserted therein where the admission would be competent for this purpose had it been introduced generally. The general rule is that evidence is admissible if it is competent for any purpose: *Murray v. Frick et al.,* 277 Pa. 190, 121 A. 47. As a corollary of this rule, evidence may be considered for any purpose for which it is competent. The object of a trial is to ascertain the truth of the facts in issue. It would be entirely unrealistic and impractical to hold that evidence which is properly a part of the record can not be considered for all purposes for which it is evidentially competent.

While Exhibit H, the answer in the previous suit which was signed by Caesar, was filed sometime in 1943, and the transaction giving rise to the present suit occurred in 1947, the plaintiff enjoyed the presumption that a status or relationship once shown to exist is presumed to continue in the absence of evidence to the

contrary: *Dinger v. Friedman et al.*, 279 Pa. 8, 123 A. 641. The only evidence to the contrary in the instant suit consisted of the denials by the defendants themselves. In such circumstances a jury could properly find that a partnership existed at the time the contract in the instant case is claimed to have been entered into. It may be added that Caesar's activities during the negotiations leading up to the making of the contract, taken in connection with the admission just discussed, strengthened the conclusion that the partnership existed. We therefore reject appellant Caesar P. Arnoni's contention that there was no evidence produced at the trial to establish that he was a partner with his father.

The order of the court below directing a new trial as to all defendants is affirmed.