Bizich, Appellant, *v.* Sears, Roebuck and Company.

Argued November 18, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*A. C. Scales,* with him *John D. Lyons, Jr.* and *Scales & Shaw,* for appellants.

*B. Patrick Costello,* with him *Louis J. Goffman, Smith, Best and Horn,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, March 17, 1958:

The jury found for the defendant in these actions of trespass arising out of a fall by the wife-plaintiff on a flight of stairs in the Greensburg Store of Sears, Roebuck and Company. From judgments entered following refusal of their motions for new trial, plaintiffs appeal. Appellants complain of certain errors in the admission of evidence and to the charge of the court.

The fall occurred on March 21, 1953 in the early evening at the top of the main stairway leading from the first floor of the store to the basement floor. Wife-plaintiff, Mrs. Kathryn Bizich, accompanied by her daughter and son-in-law, had been shopping in defendant's store and their business there involved a visit to the plant department in the basement. The stairs to the basement consisted of fourteen steps or treads approximately 5½ feet wide, covered with asphalt tile material with a one and one-quarter inch metal edging or nosing along the forward edge of each step which was fastened down with metal screws. A wooden hand-railing ran along each side of the steps.

Plaintiffs' son-in-law went down the steps first, followed by their daughter, and then Mrs. Bizich. With

respect to defendant's negligence, plaintiffs offered the following evidence: Wife-plaintiff testified that at the time of the accident she was wearing flat-heeled shoes. She stated that she stepped from the first floor level to the first step from the top with her right foot and as she stepped forward with her left leg, the heel of her left shoe caught in the metal strip extending along the top of the first floor forming the front edge of the first step. She grasped the handrail in her right hand but it was loose and she fell. Plaintiffs' son-in-law testified that he did not see Mrs. Bizich fall, but when he turned around he saw her lying on the third or fourth step from the top or first floor level. He further testified that the metal strip extending along the top of the floor forming the front edge of the first step stuck up an eighth of an inch, with one screw missing and that the handrail was loose. Plaintiffs' daughter, who also did not see her mother fall, testified that she observed the metal strip sticking up about an eighth of an inch immediately following the accident. This was the only testimony introduced with regard to the liability of defendant.

By way of defense to plaintiffs' evidence of negligence concerning the handrail and the metal nosing, defendant introduced evidence to the effect that its employes made a daily inspection of the steps for defects, including the morning of the accident, and that the store had a regular program of maintenance and inspection. One D. W. Hummell testified that he laid the asphalt tile on the steps nine months before the accident and at that time the nosing was flush with the floor and in perfect condition. He further stated in his opinion as a contractor with 15 years experience in laying floors, if one screw was removed from the nosing it would be necessary to use a metal pry with great leverage to raise up the nosing. Mr. Gaumer, assistant

manager of defendant's store, testified that he arrived at the scene of the accident shortly after it occurred and that he personally ran his hand over the nosing on the first step and found that it was not lifted up in any way. He stated that he also personally examined the handrail and found it in perfect condition. Mr. Gaumer asked wife-plaintiff how the accident occurred and Mrs. Bizich stated that she walked down the stairs sideways, that she must have tripped, and that her heel must have caught. Mr. Gaumer also questioned the daughter and son-in-law who stated that they had both examined the steps and there was nothing wrong with them. Miss Mary Myers, an employe of defendant, testified that she looked at the steps shortly after the accident and they appeared all right to her. Mr. Harry McNerny, another employe of defendant, stated that he arrived on the scene shortly after the accident, that he gave the handrail a jerk and found it not loose in any way and that he ran his foot over the nosing on the top step and it was not raised at all but was in perfect condition. Mr. David A. Milne, also an employe of the defendant who was working approximately fifteen feet from the scene of the accident, testified that shortly after the fall he examined the nosing by running his hand over the edging of the top step and found no defects. There was also considerable evidence that the nosing and handrailing were in proper order at the time of the trial and that their condition has not been altered since the accident.

The trial of this case took three days and the jury, in finding for the defendant, apparently accepted its version that the metal nosing and handrail were in no way defective at the time this accident occurred. There is no question that this finding is amply supported by the evidence, and appellants do not here contend that the verdict was against the weight of the evidence.

Appellants contend first that the court erred in allowing defendant to introduce, over plaintiffs' objection, that the statements were legal conclusions, the prior written inconsistent statements of plaintiffs' daughter and son-in-law who, at the trial, denied making the statements. Twenty or thirty minutes after this accident occurred assistant manager Gaumer questioned wife-plaintiff and her two witnesses as to the circumstances surrounding the fall, had their statements reduced to writing and signed by each of the respective persons concerned. These statements were in general that there were no defects at all in the steps at the time of the fall, that the steps were well lighted and that the accident was not the fault of defendant. Appellants contend that the court committed reversible error in failing to explain to the jury the difference between substantive and impeaching testimony.

With respect to the prior inconsistent statement of the wife-plaintiff who was a party to this litigation, there is no doubt that her prior contradictory statement was admissible against her both as substantive evidence and for the purpose of impeaching her credibility. In *Commonwealth, by Truscott et al. v. Binenstock*, 358 Pa. 644, 57 A. 2d 884, this Court said, at p. 654: ". . . 'In Kreiter v. Bomberger, 82 Pa. 59, at p. 61, Mr. Justice SHARSWOOD said: "It is clear that though a party has been examined in his own behalf as a witness, his admissions out of court, though contradicting his evidence, are admissible without having first called his attention to them, as is necessary in the case of other witnesses. Such admissions constitute independent evidence of themselves, and are not admissible merely for the purpose of impeaching the credibility of the party as a witness, although incidentally they may also have that effect." ' [Citing cases] . . ."

See also *Morse Boulger Destructor Company v. Arnoni*, 376 Pa. 57, 65, 101 A. 2d 705.

Turning next to the prior inconsistent statements of plaintiffs' two witnesses, the law is clear[1] that a prior contradictory statement may be used to impeach the credibility of a witness, but is not substantive evidence of the truth of the matter stated. The prior inconsistent statements of plaintiffs' witnesses were competent for the purpose of affecting their credibility, and upon request their admission should have been limited to that purpose: *Commonwealth v. Blose*, 160 Pa. Superior Ct. 165, 172, 50 A. 2d 742, and authorities therein cited; 53 Am. Jur., Trial, §780. Here, however, no request for such an instruction was made and in the absence of such a request, the failure of the trial judge to instruct the jury that the prior inconsistent statements were admissible solely for the purpose of impeaching the witnesses' credibility, and should not be considered as substantive evidence, is not reversible error. A case squarely in point is *Harrah v. Montour Railroad Company*, 321 Pa. 526, 184 A. 666, where we said at pps. 527-528: "In defendant's case, one of the doctors at the hospital to which both plaintiff and his son were taken following the accident was permitted to testify, over plaintiff's objection that it was 'hearsay evidence,' that the son had told him both

---

[1] *Peter Dampman v. Pennsylvania Railroad Co.*, 166 Pa. 520, 31 A. 244; *Commonwealth v. Deitrick*, 221 Pa. 7, 70 A. 275; *Scheer v. Melville*, 279 Pa. 401, 123 A. 853; *Zavodnick v. A. Rose & Son.* 297 Pa. 86, 146 A. 455; *Harrah v. Montour Railroad Company*, 321 Pa. 526, 184 A. 666; *Stiegelmann et al., Exrs. v. Ackman et al.*, 351 Pa. 592, 41 A. 2d 679; *Kunkel v. Vogt*, 354 Pa. 279, 47 A. 2d 195; *Dincher v. Great Atlantic & Pacific Tea Company*, 356 Pa. 151, 51 A. 2d 710; *Commonwealth v. Blose*, 160 Pa. Superior Ct. 165, 50 A. 2d 742; *Herr v. Erb*, 163 Pa. Superior Ct. 430, 62 A. 2d 75. See also Wigmore on Evidence, III, Third Edition, §1018.

he and his father had been drinking. Plaintiff now argues that this was not a part of the res gestae. The proposition may be conceded, but it does not follow that the admission of the evidence was improper. Previously, in plaintiff's own case, the son had denied that either he or his father had been using liquor. The statement of the doctor was clearly admissible, therefore for the purposes of contradiction, although it was incompetent to establish the truth of the facts therein stated: Scheer v. Melville, 279 Pa. 401; Zavodnick v. A. Rose & Son, 297 Pa. 86. *Plaintiff argues that if it was admissible the court should have limited and defined the competency and legal effect thereof. We need only say that no such instruction was requested at any time during the course of the trial.*" (Emphasis supplied). In 53 Am. Jur., Trial, §780, it is said: "Where appropriate, and on proper request, instructions as to impeachment of witnesses should be given. The failure to instruct with respect to the impeachment of a witness testifying against an accused is not reversible error in the absence of a request for such instruction. And the refusal of a request is not error where the matter is covered by the court's general charge, or where not applicable. . . ."

There was ample, competent evidence, independent of the prior statements of plaintiffs' witnesses, that the steps and handrail of defendant's store were in no way defective at the time this accident occurred. Had the court been requested to point out the limited effect of the prior statements, it would undoubtedly have done so. Under repeated rulings of this Court, plaintiffs may not now be heard to complain. Furthermore, the trial judge in his charge did not tell the jury that they were to consider the prior statements of plaintiffs' witnesses as substantive evidence but rather stated: "It is really a question of who is telling the truth in this

case. Are the . . . witnesses for the plaintiff telling the truth or is the manager telling the truth; did the witnesses tell the truth that evening when they signed these statements you will have before you or did they not? . . ." Concededly, this instruction could have been made clearer, but in the absence of a request by plaintiffs for a more elaborate charge on the point, we do not believe it constitutes reversible error.

The cases relied on by appellants do not sustain their position. In *Dincher v. Great Atlantic & Pacific Tea Company,* 356 Pa. 151, 51 A. 2d 710, wherein one of the several reasons given for reversal was that the jury should have been instructed concerning the limited purpose for which certain evidence was received, the trial court itself in its charge and more specifically in its opinion treated the evidence as if it were in fact affirmative proof. In *Herr v. Erb,* 163 Pa. Superior Ct. 430, 62 A. 2d 75, the witness' testimony was attempted to be discredited not by a prior inconsistent statement of that witness, but by what someone else said the witness had said. The Court held that such testimony offended the rule against introducing collateral matters into the trial, saying at p. 435: ". . . while a witness may be discredited by showing prior inconsistent statements (Harrah v. Montour Railroad Co., 321 Pa. 526, 184 A. 666), the rule does not go so far as to say that a witness may be discredited by what someone else said the witness had said."

Appellants also contend that the case was submitted to the jury in an argumentative charge that deprived them of a fair trial. Appellants have selected certain portions of the charge which they argue was tantamount to directing a verdict for the defendant. The charge covers twenty printed pages of the record, and we are convinced that the issues of defendant's negligence and wife-plaintiff's contributory negligence were

fairly submitted to the jury. In at least ten different portions of the charge the trial judge emphasized that the jury must decide the facts and whether the wife-plaintiff and her witnesses were telling the truth or the defendant's witnesses. At no place in the charge did the trial judge attempt to usurp the functions of the jury and decide the questions of fact before them. In summing up his charge, the trial judge said: "That's about all I can say to you. I can't help you any on the decision of the main facts, because it all depends on the credibility of these witnesses, their believability. Are they telling you the truth, which one is telling you the truth? You will have to determine that . . ."

In *Thomas v. Mills*, 388 Pa. 353, 130 A. 2d 489, we said at pps. 357, 358: ". . . We have frequently held that a trial judge may express his opinion on the facts in a case if he makes it abundantly clear that it is the jury's opinion and not his that must govern in the determination of the issues. At no fewer than a half dozen separate places in the charge the court below clearly emphasized that the conclusions as to negligence were for the jury as to all of the defendants. . . .

"In carefully reading the charge as a whole, as it must be read in order to determine its ultimate effect: Masinko et al. v. McLeary, 337 Pa. 355, 11 A. 2d 648; Cain v. Kohlman, 344 Pa. 63, 22 A. 2d 667; Robinson et al., Admrs. v. Philadelphia Transportation Co. et al., 347 Pa. 288, 32 A. 2d 26; Bollinger, Admrx. v. West Penn Power Company, 365 Pa. 599, 76 A. 2d 214; it is perfectly clear that the issues of fact were fully, fairly and adequately presented to the jury, and that the applicable principles of law were correctly explained to it." See also *Keating v. Belcher*, 384 Pa. 129, 119 A. 2d 535.

Appellants also contend that the trial court erred in its charge regarding a jury view of the scene of the

accident. Defendant's store is located only one city block from the Westmoreland County Court House and on defendant's motion, the jury was taken for a view of the *locus in quo*. Of course, the granting of a view is within the sound discretion of the trial court, and we will not reverse unless it is shown that this discretion was improperly exercised: *Mintzer v. Hogg*, 192 Pa. 137, 43 A. 465; *Higgins et ux. v. Jones*, 337 Pa. 401, 11 A. 2d 158. Appellants argue that the trial judge in effect told the jury to substitute its view for the testimony of the witnesses when in the charge he said: ". . . All you ladies walked down safely, and there is ample testimony here that the condition is the same now, the day you were there, as it was at the time of the accident." We do not agree with appellant's interpretation of this remark. In fact there *was* abundant testimony introduced that the condition of the steps was the same at the time of trial as when this accident occurred. The most that can be said for the remark is that the trial judge was expressing his opinion on the facts of the case. As we have already indicated, a trial judge has this right as long as he makes it abundantly clear that it is the jury's opinion of the facts that must govern in the determination of the issues. This the trial judge clearly did; in fact, his very next sentence was: "It is really a question of who is telling the truth in this case."

We are of the opinion that the issues of fact were fairly and adequately presented to the jury along with the applicable principles of law.

Judgments affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

A prospective employer desiring to ascertain the antecedents of an applicant for employment, telephoned

the applicant's previous employer and asked for information on the applicant's character. The previous employer replied: "Oh, he's all right, but if you want a crook like that around, go ahead and hire him." The charge of the trial judge in this case was something like that reply. He told the jury that they could find for the plaintiffs but if they wished to do so senseless and idiotic a thing as that, it would be their responsibility, and he would have none of it.

Throughout the entire length of the Judge's charge, which ran 20 printed pages, the defendant's case travelled on a big wheel while the plaintiffs rode a small wheel. The defendant's case strode on long legs, the plaintiffs' case stumbled on short legs. The defendant's case was trumpeted with a bass horn, the plaintiffs' case squeaked through a piccolo. The Trial Judge's charge was unilateral, partisan, partial, warped, unequal, inequitable, and unjust.

This Court has said over and over, as indeed it does in this very case, that a Judge may express his opinion of the facts provided he makes it "abundantly clear that it is the jury's opinion of the facts that must govern in the determination of issues."

The Judge in this case reversed the procedure by expressing that it was possible for the jury to return a verdict for the plaintiffs, but he made it abundantly clear that in all justice they should return a verdict for the defendant.

The facts in the case were very simple. Katherine Bizich was injured in the Sears, Roebuck store in Greensburg on March 21, 1953. She testified at the trial that, proceeding downstairs in the store, a metal strip on the first step caught the heel of her left shoe, she felt herself tripping and she seized a hand rail which was loosely fastened, and she fell. Her son-in-law, who was with her, also testified to the loose metal

strip and railing. Her daughter explained further that the metal strip rose one-eighth of an inch above the surface of the step.

The defendant called witnesses who testified that the steps and railing were in good condition. During the trial the jury visited the store and saw the steps in question. They returned a verdict for the defendant.

The husband and wife plaintiffs allege various trial errors, including the one that the Trial Judge's charge was argumentative and it thus deprived the plaintiffs of a fair trial. I am satisfied that on that point alone the plaintiffs are entitled to a new trial. Trial by jury can degenerate into a mere meaningless form if trial judges are to be permitted to coerce, persuade, and induce juries to return verdicts in accordance with the Judge's will.

The jury here, which was made up of 12 ladies, could not but be persuaded by the graciousness, the charm, and the satire of the venerable Judge who justly enjoys in his community a justified name for equanimity, ability, and impartiality. But in this case he threw impartiality to the winds and neutrality to the hounds as he rode the steed of partisanship with the vigor and determination of a cavalry officer. At no time did he exhibit that equanimity of temper, that fairness of consideration, that deliberation of purpose for which he is known in Westmoreland County and by all who have ever had contact with him. He was determined, in this case, to see a verdict for the defendant and nothing could thwart him. Facts, law, reason disappeared under the thundering hooves of his partisan charge—and what was inevitable became reality. The jury brought in the verdict desired by the Judge— and Mrs. Bizich fell down the stairs of injustice and unfairness. She never had a chance once the Trial Judge mounted the courser of his charge.

I have a high regard for the Trial Judge and I had hoped that this Court, upon reading the record, would have summarily ordered a new trial without saying too much about it because it is so clearly evident that January 14, 1956 was not one of the learned Judge's best days in his long and distinguished career. But since the Majority of this Court chose to rationalize the many deficiencies in the Judge's charge and has made an effort to support it with logic as faulty as that which characterized the charge itself, it has become my duty to point out wherein the Trial Judge failed,—not because I have any less regard for him than my colleagues, but because so bad a set of instructions as this one cannot be allowed on the books as an undisputed example of legal correctness or fair treatment of a litigant in Court.

The plaintiffs have pointed out various excerpts from the Trial Judge's charge which they urge as error. The Majority of this Court says that the charge must be considered as a whole and not as an accumulation of parts. (*Thos. v. Mills*, 388 Pa. 353.) It is precisely by doing that very thing that one gathers the full import of the Judge's unfairness and his resolution not to have the plaintiffs prevail under any circumstances. But while the charge as a whole is wholly unseaworthy, it does not lack for leaks in its several compartments. For instance, the Trial Judge said, anent the jury's visit to the stairs, the locale of the accident, ". . . All you ladies walked down safely, and there is ample testimony here that the condition is the same now, the day you were there, as it was at the time of the accident."

If there was ample testimony that the condition of the stairs at the time of the visit was the same as they were at the time of the accident; there was also testimony that they had undergone alteration and

repair since Mrs. Bizich tumbled down their length. The plaintiff and two other witnesses testified that on the day of the mishap the metal stripping was loose and the hand railing was insecure. If these two items were in order on the day of the jury's visitation, the stairs, to that extent, had undergone mutation. Furthermore, the fact that the jury walked down the stairs safely is no criterion that one entirely unaware of a defect in the staircase might not have innocently fallen. In the case of *Flower v. Baltimore etc. R. Co.*, 132 Pa. 524, 528, this Court emphatically condemned the practice that it apparently now condones. In that case we said: "It was never intended that the view of the jury should be substituted for the evidence, and that they should make up their verdict from the view in disregard thereof."

An utterly unpardonable deviation from a Judge's responsibilities and limitations in authority occurred when the Judge said: "They provided a hand rail, plaintiffs say it was loose; nobody else says it was loose. The manager says he examined them every morning, everything was in good shape. You take that all into consideration and determine what it is; the weight, I would say the weight of the testimony is that the defendant did use good care, and the fact that Sears Roebuck Company required the manager to examine and inspect and survey the entire store every morning before the store opened for business indicates that they were observing due care." Who decides the weight of the testimony: the jury or the Judge? What was left for the jury to determine when the Judge, sitting in judgment with all the awesomeness of his robes, his years, his knowledge, and his wisdom, declared as a positive fact that the weight of the testimony was that the defendant used good care? If the defendant used good care, that was the end of the case and of

course, that apparently was what the Judge intended his statement to be—the burial of the plaintiffs' claim.

After once giving a fair, if not overly extended definition of what constitutes negligence in the case, the Judge put aside his robes and proceeded, as if he were the defendant's attorney himself, to show that there was no negligence. Argued the Judge: "Now was there such negligence? The plaintiff herself says that she—well, you will recollect the testimony, that the son-in-law went down the steps first and then his wife followed and then Mrs. Bizich came last. She said Helen and Joe were in front of me, I grabbed the rail; the rail was loose; the right leg first, as she stepped with the leg and no can pull the left leg." Her left one caught on the metal strip, the top of the steps. She says her heel chipped. In connection with that testimony, she introduced this shoe that you will have out with you. It is Exhibit 2, and you should examine it carefully. As I look at that heel on that shoe, it doesn't substantiate their testimony. She was going down the stairs, she said she could not pull the left foot down.

And now, from acting as defendant's counsel, the Judge assumed another role, that of witness. He said: "If you will notice there is a nail sticking out from the heel of that shoe, it sticks out perhaps an eighth of an inch. As I see it there is no chip knocked off the heel, the chip is still hanging onto the heel; the nail instead of being bent sideways as she would go down, is bent forward; if she were going down in the ordinary fashion the nail would be bent back this way; it is bent to the toe of the shoe."

On the scales of impartiality he cast a slight token of loyalty, namely, "I think you ought to examine that very carefully and determine what caused her to catch her heel; whether it was her own negligence or whether

it was the negligence of the company, that caused her to fall, if that was the cause of her fall. I don't know that it was, or that it wasn't; you determine that." But he quickly swept that bauble off the scales by his utterance: "How long was this strip loose; nobody says, nobody says it was loose excepting the plaintiff and her son-in-law and daughter. Every other witness called, who said anything about that strip on the top of the steps, said it was not loose, that it is in the same condition today, same condition the other day when you went down the steps yourselves, as it was at the time of the accident."

Who but the plaintiff and her witnesses would say that the step was loose? Certainly it was not to be expected that the defendant's witnesses would testify that the store had failed in maintaining safe premises for the store's customers?

Every once in a while an ember of neutrality stirred, and the Judge would begin a statement which seemed that he was about to leave to the jury the constitutional duty of determining facts, but he could hardly ever get himself to kindle a flame of absolute neutrality. For instance, "In fact that's about all there is in this case, because if this plaintiff fell by reason of a strip being loose or a banister being loose and that caused the fall and it being in that condition, in a bad condition for a length of time that would—say for a day or perhaps it might be even less than a day for the number of people that would go up and down there, but it would have to be for such a length of time as would charge the owner or proprietor with notice of that condition."

It will be noted here that the Judge wished to say that if the plaintiff fell by reason of a loose step or banister she would be entitled to recover but he never said it. It was an "if" left dangling in the midair

of ambiguity and in the fog of obscurity, never so dense, however, that the jury could not see what the Judge wanted them to see, namely, that their verdict was to be for the defendant.

On another occasion the Judge found himself in the neighborhood of impartiality but he would not let himself enter the house of a fair deliberation of the case. He said: "If you determine that there was a defect in that stairway there, or the banister was loose, or that the strip was loose, . . ." One would naturally assume that after that kind of a beginning the Judge would say—"you will then return a verdict for the defendant." But not the learned Trial Judge in this case. This is how he followed the utterance I have quoted: ". . . nobody here tells how long it was loose; there is no evidence whatever here that we can see as to how long that existed; whether of long standing that the manager should have taken notice of it."

He then followed with a non sequitur: "Take that all into consideration and were these releases signed in blank or did these girls tell the truth here about the preparation of those statements?"

Not only did the Judge minimize the evidence of the plaintiffs, not only did he magnify the evidence of the defendant, but he even went so far as to arouse prejudice in the minds of the jury against the plaintiffs. It seems that even prior to the accident Mrs. Bizich had a disabled leg which required her to descend steps sideways. Her daughter and son-in-law preceded her down the steps of the Sears-Roebuck store on the day of the accident. The Judge gave the impression, undoubtedly unintentionally, that there was something cowardly about the manner in which the plaintiff's daughter and her son-in-law preceded her down the steps. He said: "I just want to call your attention to the testimony of the plaintiffs in this case.

Who observed due care? If your mother had fallen and broken a leg and she was lame, and had to go downstairs sideways, would you go down ahead of her or would you assist her going down?"

What did that have to do with the case? This statement could only have had one purpose and that was to arouse a resentment against the daughter who had testified in behalf of her mother and thus destroy her credibility. The Judge even lingered on this rather ignoble theme: "Who observed due care in going down those steps? The son-in-law went down first, the daughter went next and the mother came last. Who observed due care?"

What did this have to do with the accident? It may be that the daughter and son-in-law thought they could better protect Mrs. Bizich by going first, but even if there were poltroonery of the worst degree on their part, Mrs. Bizich should not have been deprived of a verdict if in fact the railing was broken and the step defective.

The Judge then touched another chord cacophonic with prejudice. He submitted to the jury: "Who is interested in the outcome of the case? Are these clerks, who get their salary whether you decide in favor of the company or against the company, are they telling the truth or are they interested in the outcome of the case, or are the witnesses for the plaintiff, who are asking a verdict at your hand, interested in the outcome of the case? In other words, who would gain or lose by your verdict."

What had that to do with the case? According to this type of reasoning a plaintiff could never recover when he stands to gain by a verdict in his favor. It should not be necessary to point out to a judge that a verdict is not to be decided on who stands to gain but on what the evidence proves to be the truth.

The Judge had a difficult time getting away from this drumfire of prejudice. He went on: "In deciding this case, you don't decide it on sympathy. Of course, we are all very sorry for this lady that fell, she is hurt, but whose fault was it; who was negligent; who was careless; who didn't observe due care and who stands to lose or gain by the result of your verdict?"

He also added that if the jury should return a verdict for the plaintiff she was not entitled "to be made rich by it." Did the Judge mean that the jury was to pass on equal distribution of wealth in the land?

I regret that I must write this Dissenting Opinion because I hold the Trial Judge in high esteem but we will never achieve the ideal of fair, impartial charges if we allow so conspicuous a failure as this particular charge to go unnoticed and uncommented upon.

I do not believe that the Majority has done the Trial Judge any service by placing its approval on a charge which is obviously one-sided and partial, and I believe that a great disservice has been done the plaintiff in this case. She never had her case submitted to the triers of the facts in accordance with the rules of law and elementary rules of fairness and good sportsmanship.

I dissent.