W. Earl Whitenight and Lillian M. Whitenight, his wife, *v.* Commonwealth of Pennsylvania, Department of Highways.
G. Raymond Whitenight and Mary A. Whitenight, his wife, *v.* Commonwealth of Pennsylvania, Department of Highways.

Argued December 9, 1970, before President Judge
BOWMAN and Judges KRAMER, WILKINSON, JR., MAN-
DERINO, and MENCER.

*Robert H. Raymond, Jr.,* Assistant Attorney Gen-
eral, with him *Robert W. Cunliffe,* Deputy Attorney
General, and *Fred Speaker,* Attorney General, for ap-
pellant.

*Hervey B. Smith,* with him *Smith, Eves and Keller,*
for appellees.

146

OPINION BY JUDGE MENCER, January 28, 1971:

The Commonwealth filed appeals from judgments entered on jury verdicts awarding appellees, W. Earl Whitenight and Lillian M. Whitenight, $15,000 and G. Raymond Whitenight and Mary A. Whitenight $75,000 as damages for condemnation of 24.7 acres of their land. The appellees own two adjoining farm properties situate in Scott Township, Columbia County, Pennsylvania. Prior to the condemnation, the farms contained approximately 213 acres of land, and W. Earl Whitenight, the father, and G. Raymond Whitenight, the son, operated a sand and gravel business upon these farm lands.

On May 29, 1962, the Commonwealth, acting through the Department of Highways, now the Department of Transportation, condemned for road construction 2.9 acres of the 63 acres owned by W. Earl Whitenight and wife and 21.8 acres of the 150 acres owned by Raymond Whitenight and wife. On March 23, 1967, the Board of View awarded Mr. and Mrs. W. Earl Whitenight $10,000 and Mr. and Mrs. G. Raymond Whitenight $28,500. The following day the Whitenights filed separate appeals from the awards of the Board of Viewers and, when the cases were called for trial, it was stipulated that the two cases be tried together but that the jury should make two separate awards. Following the trial, concluded on January 17, 1968, the Commonwealth filed a motion for a new trial. The lower court refused the motion and judgments were entered on the verdicts.

The Commonwealth advances a single argument as to why this Court should set aside the judgments below. The Commonwealth contends that the trial court erred in allowing testimony by witnesses for the condemnees, over the Commonwealth's objections, as to the dollars per ton value-in-place of sand and gravel apart

from the value of the land. The appellees assert that such testimony was admissible but, even if the trial court did err in admitting such evidence, it was harmless error which would not warrant the grant of a new trial when considered in respect to the clear and cautionary charge of the trial court relative to the proper measure of damages.

The general rule, prior to the Eminent Domain Code of 1964, Act of June 22, 1964 (Special Session), P. L. 84, Art. I, §101 et seq., 26 P.S. §1-101 et seq. (See *Pane v. Department of Highways*, 422 Pa. 489, 222 A. 2d 913 (1966)), was that the proper measure of damages for lands taken under the power of eminent domain was the difference between the market value of the land before the exercise of the power and as unaffected by it and the market value immediately after the appropriation and as affected by it. *Brown v. Commonwealth*, 399 Pa. 156, 159 A. 2d 881 (1960); *Spiwak v. Allegheny County*, 366 Pa. 145, 77 A. 2d 97 (1950).

It is permissible for the condemnee to introduce evidence of particular items lost through the condemnation. *Gilleland v. New York State Natural Gas Corp.*, 399 Pa. 181, 159 A. 2d 673 (1960); *Price v. Commonwealth*, 205 Pa. Superior Ct. 142, 208 A. 2d 23 (1965). However, the condemnee may not introduce evidence of the value of the particular items lost through condemnation but merely the fact that these items were lost. *Hasenflu v. Commonwealth*, 406 Pa. 631, 179 A. 2d 216 (1962).

The general rule relative to mineral deposits is that the condemnee may not introduce evidence of the number of tons of minerals lost and then multiply that number by some dollar figure such as the market price or the royalty payment. *Sgarlat Estate v. Commonwealth*, 398 Pa. 406, 158 A. 2d 541, cert. denied, 364 U.S. 817 (1960); *Searle v. Lackawanna & Bloomsburg*

*R. R. Co.,* 33 Pa. 57 (1859). Such a rule does not preclude evidence being admitted that would establish the existence under the condemned land of mineral deposits, as well as the quantity and quality of the same. The jury, when determining fair market value, must place itself in the position of a potential purchaser of the tract in question, and certainly in doing so consideration would be given to the existence of the mineral deposits in arriving at a purchase price.

We agree with what Justice JONES said in *Werner v. Commonwealth, Department of Highways,* 432 Pa. 280, 286, 247 A. 2d 444, 448 (1968) : "It is unrealistic to require a potential purchaser, or a jury, to hazard a guess as to the value of a tract of land without knowing the extent of a valuable mineral deposit situated below the surface of the land. If the jury is to make an educated determination of the value of a tract of land, it must know what is below the ground as well as what is on the surface.

"We are not quarreling with the time-honored rule that the jury may not multiply the number of tons by some dollar figure in order to value the minerals separately. This is error for two reasons. First, the minerals may not be valued separately apart from the remainder of the tract. Second, it is impossible to determine how much a ton of sand and gravel will be worth until it has been removed from the earth and processed for market. All we are saying is that a tract of land containing 500 tons of sand and gravel is much more valuable than a tract of land with five tons and the jury has the right to know more than that there is a sand and gravel deposit of unknown quantity below the surface."

Therefore, we conclude that it was error for the trial court to admit, over the Commonwealth's objections, evidence that would establish a per ton value for the

sand and gravel under the appellees' land. However, we must consider whether in this case such error was fatal or subject to being corrected by the trial court's cautionary charge to the jury. The court below specifically instructed the jury that they were not to multiply the number of tons by a price per ton figure.

The trial court charged the jury: "The law on the subject is rather clear, and the rule of the law is that where land is condemned, the party who suffers the loss shall be compensated by the difference between the fair market value of that land immediately before the condemnation, and taking that date of condemnation which here has been agreed to be May 29, 1962, and the fair market value as affected by the condemnation immediately thereafter.

"Fair market value is a composite thing and it is the difference between these two figures that you as jurors must consider. As we said, we did permit the experts to give allocations for special items, but you as jurors do not do that. You must determine the difference between the fair market value of that property as it stood there on May 29th and the fair market value as it was immediately after the condemnation and as affected by the placement of this new Keystone Shortway through that property."

Subsequently, the jury was further charged: "We think it is necessary that we point out to you a very important part in this case, and that is this price per ton of minerals in place.

"Mr. Smith has argued to you in his closing address that you should multiply fifteen cents a ton the number of hundreds of thousands of tons that are still in place and will have to remain there and then come up with that figure as damages. You do not do that. The measure of damages is the fair market value of the entire property before and the entire property afterwards as affected by the taking. The reason you can't use

this multiplication figure is because if something is in place that maybe they wouldn't take that bank out of there for fifty or a hundred years, and if you are going to pay a man for something today that he doesn't remove for a long time, he could put that money at interest and by the time he takes it out he could have his money doubled or tripled, so you have to look at it as the witnesses testified to, and you have to look at the overall picture of the fair market value.

"The fair market value has been defined as what a willing seller not forced to sell would sell his property to a willing buyer not forced to buy without any duress on the open market. Now, since this is such a variable thing and since it is such a hard thing to determine, that is the reason these things vary so much and that is why they have called so many witnesses, and it is up to you twelve people to scan these matters, sift them and weigh them and then try to come up with what you twelve people believe will be a just figure for these two claimants to receive from the Commonwealth of Pennsylvania for the loss in damages they suffered by reason of the construction of the Keystone Shortway."

The cautionary charge of the trial court was clear and adequate. The jury was instructed that no separate value could be placed upon the minerals in place and that they were not to multiply the number of tons of minerals in place by a price per ton figure. The amount of the verdict in each case establishes that the jury understood and followed the trial court's correct instructions and, in light of the explicit language of the instructions, eliminates the possibility that the jury was misled by the inadmissible evidence as to price per ton for sand and gravel in place.

We find that the trial court was correct in denying the Commonwealth's motion for a new trial.

Judgments affirmed.

MANDERINO, J., concurs in the result.