Sechan Limestone *v.* Commonwealth.

622

Argued June 1, 1971, before President Judge Bow-MAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS. Judge MANDERINO did not participate in the decision.

*Thomas J. Dempsey,* with him *Armand Cingolani, Jr.,* and *Cingolani & Cingolani,* for appellant.

*David A. Johnston, Jr.,* Assistant Attorney General, with him *Guy S. Mamolito,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION PER CURIAM, March 8, 1972:

After argument before the Court en banc, the Court being equally divided, the order of the lower court is hereby affirmed.

___

OPINION OF JUDGE ROGERS IN SUPPORT OF AFFIRMANCE:

In *Porter v. Commonwealth,* 419 Pa. 596, 215 A. 2d 646 (1966), an earlier round of this protracted litigation, the Supreme Court held that the damages to appellant Sechan's interest in the minerals in five tracts of land owned by others might not be tried in one action separate from the actions required to ascertain the injuries to tracts in which the minerals lay. This it held followed from Section 507(a) of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, Article V, 26 P.S. §1-507(a), which we here quote in full: "The claims of all the owners of the condemned property, including joint tenants, tenants in common, life tenants, remaindermen, owners of easements, and all others having an interest in the property, and the claims of all tenants, if any, of the property, shall be heard or tried together and the award of the viewers or the verdict on appeal from the viewers shall first fix the total amount of

damages for the property, and second, apportion the total amount of damages between or among the several claimants entitled thereto."

The trial below was for the purpose of awarding damages due for the partial taking of a tract of land containing about 43 acres owned by Francis H. Porter and Katherine E. Porter, his wife. The appellant, the owner of a nearby limestone quarry operation, had, about three years before the condemnation, entered into an agreement with the Porters by which for the sum of $25 per month and the promise of royalties he obtained the right for a period of five years[1] to extract minerals from the property. Therefore, as decided by the earlier *Porter* case and as required by Section 507 of the Code, the jury was called upon to fix the total amount of damages for the property as defined by the surface and second, to apportion the total amount of damages between the Porters as owners of the property, subject to appellant's right to extract the minerals, and the appellant as the owner of the right to remove such minerals.[2]

Justice COHEN, the author of the court's opinion in the earlier *Porter* case, wrote that Sechan might "[i]n each view proceeding . . . show the value of his interest in the property by showing the value resulting from the integrated use." 419 Pa. at 599, 215 A. 2d at 648. This sentence caused the controversy here because not only did the appellant assert his right to show the value of his interest resulting from its integrated use, he

---

[1] The term was renewable for a further five-year period *if the Porters agreed. No mining was ever done on the Porter land.*

[2] As the Supreme Court in *Porter, supra,* and this court in *Commonwealth v. Haydu, et al.,* 1 Pa. Commonwealth Ct. 561, 275 A. 2d 346 (1971), remarked, the name applied to the interest of the one having the right to extract minerals, whether a fee or license or lease, is of little value in deciding an eminent domain case.

objected to the testimony of Commonwealth's experts to sales of properties comparable to the property condemned. Such evidence he contended was incompetent because the comparable properties were not part of an integrated mining operation when sold. Over appellant's objection the trial judge permitted testimony as to recent sales of properties of unquestioned physical comparability to buyers conducting integrated mining, processing and marketing operations. Appellant contends that this was error because evidence of sales of properties not a part of such an operation was irrelevant to the issue of the value of his interest. This holding overlooks the fact that *at the trial*[3] the issues were not simply that of the apportionment due the appellant for his right to extract minerals, but also that of the total amount of damages for the property (required by the code to be fixed by the jury) and the portion of those damages properly due the Porters. The testimony as to sales of properties comparable to the Porter property was relevant to both of these issues and therefore clearly admissible in this trial.

The fallacy of the appellant's position becomes apparent upon a supposition that the Porters' experts, instead of the Commonwealth's, had considered and sought to testify concerning sales of comparable properties. Would the Porters, also condemnees, be deprived of the use of this permissible evidence because the holder of the right to extract minerals from their lands had chosen to pursue a theory of valuation of his interest to which such evidence was not adaptable?

Further, the sales of properties comparable to the condemned property has relevance generally. Just compensation is measured by market value, not by the value

---

[3] Neither the Porters nor the Commonwealth appealed from the judgments entered upon the jury's verdict.

of property to the condemnee, unrelated to the market place. Hence, the prices paid by quarry operators for comparable properties was probative of the market value not only of the property as a whole, the first function the jury was required to perform, but also of the market value of the appellant's interest. We see no reason why a hypothetical willing seller of a portion of an assemblage would obtain from another assembler a price higher than that for which the buyer could acquire comparable property from others.

Nor do I believe that the trial judge erred in admitting evidence in the condemnor's case of the presence of large amounts of limestone in the general area of the condemned property. Sechan, as a condemnee, was plaintiff in these proceedings. Section 517 of the Eminent Domain Code, 26 P.S. §1-517. He produced extensive testimony of mining experts relating to the quantity and quality of minerals in the Porter property in an effort to prove that his interest had special value. The Commonwealth's evidence tending to show that such minerals existed in abundant quantities in the vicinity went to this issue. Its admission was, in my opinion, a proper exercise of the trial judge's discretion.

The general rule is that evidence is admissible if it is competent for any purpose. *Morse Boulger Destructor Co. v. Arnoni,* 376 Pa. 57, 101 A. 2d 705 (1954). The trial of a lawsuit is not to be reviewed by an appellate court by the standard of a music critic, score in hand, judging the performance of a Beethoven sonata. Decisions as to the competency of evidence are to be based on logic and general experience. *Gregg v. Fisher,* 377 Pa. 445, 105 A. 2d 105 (1954). While evidence should relate to the matters in issue, ordinarily the decision of the trial judge as to how far proof of collateral issues will be permitted will not be interfered with

unless the power of the trial judge is manifestly abused. *D'Allura v. Perri,* 138 Pa. Superior Ct. 261, 10 A. 2d 124 (1939).

By these standards, this difficult case was well tried below. I would affirm.

President Judge BOWMAN and Judge WILKINSON join in this opinion.