Porter (et al., Appellant) *v*. Commonwealth.

Argued March 15, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Thomas J. Dempsey,* with him *Armand Cingolani, Jr., Luke and Dempsey,* and *Cingolani & Cingolani,* for appellant.

*David A. Johnston, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 3, 1973:

This appeal arises from an eminent domain action to determine the just compensation payable to Robert C. Sechan [appellant-condemnee], trading and doing business as Sechan Limestone, and to Francis H. Porter

and Katherine E. Porter, his wife [condemnees], for the taking of property located in Butler County. On March 11, 1963 the Commonwealth of Pa., Dept. of Highways [now Dept. of Transportation] condemned, for the construction of a limited access highway, approximately 11 acres of a 46 acre tract owned by the Porters. Five months before the condemnation, on October 13, 1962, appellant entered into a mineral lease with the Porters, giving him the right to remove and process all of the limestone, coal and clay under the Porter property for a term of 5 years—renewable for another five years if the Porters agreed. The lease required, among other things, that appellant pay the Porters $25.00 per month from the date of execution, $10,000 before entry on the land, $.05 per ton for all limestone removed and $.01 per ton for the right to haul across the Porter property. Appellant also owned leased mineral interests in four contiguous tracts owned by different persons and also condemned. On one of these adjacent tracts appellant operated a limestone processing plant. These five mineral interests—created by separate leases—were used by appellant in the integrated operations of mining, processing and marketing limestone. Appellant's operation began in 1953.

Following condemnation, appellant joined in the Porters' petition for view. A viewer's hearing was held and their report was filed June 29, 1964. The viewers determined that the property had been damaged to the extent of $16,000 including compensation for delay in payment: $14,000 to the Porters and $2,000 to appellant. Appellant in his appeal from the viewer's determination sought to consolidate, in the eminent domain proceeding which involved only the Porter property, the claims for damages to his interests in all of the five condemned properties. The lower court rejected this approach. In affirming the lower court's decision we held that it was not a denial of due process to refuse to

consolidate appellant's claims in one condemnation action since he might attempt to prove in each view proceeding the value of his interest in the property by showing the value resulting from the integrated use. *Porter v. Commonwealth,* 419 Pa. 596, 216 A. 2d 646 (1966).

The case was subsequently tried before a jury in May, 1967 in the Common Pleas Court of Butler County to determine the total amount of damages resulting from the condemnation and to apportion that amount between the Porters as owners of the property and appellant as owner of the leased mineral interest. The conflicting testimony with respect to damages was as follows: the testimony of Mr. Porter and his two witnesses ranged between $67,000 to $143,000 as to his damages; appellant's witness testified that appellant's damages were $112,000; and the Commonwealth's two witnesses ranged between $6,000 to $7,400 in damages for both interests combined. A verdict in favor of the condemnees was rendered in the amount of $34,000 without delay compensation: $27,000 to the Porters, and $7,000 to appellant. The trial court molded the verdict in favor of appellant by awarding delay compensation in the sum of $1,773.31. Motions for a new trial were filed by all parties but denied by the lower court. Appellant filed the only appeal to the Commonwealth Court.

The Commonwealth Court being equally divided (MANDERINO, J., absent) affirmed the lower court's order in a per curiam opinion filed March 8, 1972. Judge ROGERS filed an opinion in support of affirmance. *Sechan Limestone v. Commonwealth,* 4 Pa. Commonwealth Ct. 621, 288 A. 2d 553 (1972). We granted allocatur to review the lower court's application of the "integrated use" doctrine, which was promulgated in *Porter v. Commonwealth,* 419 Pa. 596, 215 A. 2d 646 (1966). The doctrine was intended to insure just compensation to

persons who have integrated property interests in contiguous tracts of land by recognizing that there may be an increase in value as a result of the condemned property being used with other properties of similar utility in an assemblage.

Appellant makes four arguments that he feels compel our reversing the judgment of the lower court and granting a new trial. Initially he argues that the trial court erred in admitting the Commonwealth's evidence on "comparable sales" because the sales were of eight general farm properties and a dairy farm, none of which was part of an assembled integrated limestone operation.

Although Section 705(2) of the Eminent Domain Code[1] provides that a valuation expert may testify as to the sale price of comparable properties sold within a reasonable time before or after the condemnation, not all selling prices of allegedly comparable properties are admissible. In order to be admissible the trial court must decide whether the sale is "judicially comparable." *Commonwealth v. 108.3 Acres of Land*, 431 Pa. 341, 244 A. 2d 124 (1968). Once this is determined, the sale price is admissible as evidence of market value as well as for credibility purposes. Comment of the Joint State Government Commission to Section 705(2)(i) of the Eminent Domain Code.

A careful reading of the record indicates that these sales were not judicially comparable. Even though some of these sales resulted in the properties becoming part of an integrated limestone operation they stood alone at the time of their sale. In comparison to the Porter tract not one of them was part of an assemblage of tracts, all of which were known to have substantial marketable limestone deposits and accessible, through

---

[1] Act of June 22, 1964 (Special Session) P. L. 84, 26 P.S. §1-101 et seq. (Supp. 1972-73).

hauling rights, to a contiguous tract on which an operating limestone crushing plant was located. Thus, the value of the properties which were the subject of the Commonwealth's comparable sales could not have been enhanced from being part of an integrated operation.

The Commonwealth contends that it is impossible to find a sufficient number of sales of property which were part of an integrated operation at the time of their sale to serve as a comparable guideline since an owner of an integrated operation would not sell one of his tracts unless it was no longer crucial to the operation. It concludes that its alleged comparable sales were the only rational approach to value in this case. We disagree. Even assuming that there are no comparable sales available, the market value might be established by the testimony of persons acquainted with the lands, and whose knowledge and experience qualifies them to form an intelligent judgment as to its proper valuation. *See Glen Alden Coal Co. v. Commissioners,* 345 Pa. 159, 27 A. 2d 237 (1942).

Some of these sales further lacked "judicial comparability" in that there was no proof of the presence, quantity or quality of limestone underneath the properties. When asked whether he knew if there was limestone underneath a particular property one of the Commonwealth's valuation witnesses stated, "It's generally known in this particular area there is limestone in this general area." The same witness admitted that as to one of the other properties he did not know whether at the time of the sale the seller knew whether or not there was limestone under the property. Neither of the Commonwealth's valuation witnesses testified as to what part of the allegedly comparable properties contained limestone nor compared the quality recoverable from these properties to that recoverable from the Porter tract. In *Werner v. Commonwealth,* 432 Pa. 280,

247 A. 2d 444 (1968), where land containing sand and gravel deposit was condemned for highway purposes we affirmed the trial court's exclusion of the price paid by the condemnee for a tract bought to replace the land condemned because the record failed to disclose whether the land purchased contained mineral deposits of any value as did the condemned land. In our view a foundation of comparability "is especially important in a case such as this where valuable mineral rights are included in the land condemned." Id. at 293, 247 A. 2d at 451.

Appellant's second argument is that it was error for the trial court to allow the Commonwealth's geologist to testify that the total amount of limestone, of a thickness in excess of 15 feet, in Butler County was 13,300,-000,000 tons. We are not persuaded by the Commonwealth's contention that these figures were admissible to support its allegedly comparable sales prices and to show that appellant's mineral lease agreement was not unique. This evidence was irrelevant and prejudicial since much of the reserves could not be integrated into a limestone operation. The record discloses that this figure included all of the limestone in the county of that thickness, whether it had one foot or 120 feet or more of overburden. It also included all the limestone under the City of Butler and towns in Butler County, and under all roads, buildings, houses, railroads, and factories in the County. Moreover, there was no evidence as to how far from the assemblage the limestone was located and whether any of it was under other contiguous tracts.

Appellant next argues that he should have been permitted to show royalty payments in excess of $100,000 and $50,000 to two of the owners of the other tracts in the integrated operation. This evidence was offered in response to the Commonwealth's valuation witnesses'

testimony that the mineral lease was worth $50.00 to the Porters and worth almost nothing to appellant.[2] The lower court erred in denying appellant's motions to admit this rebuttal evidence to show that there was some value in the property interests of both the Porters and appellant and to impeach the testimony of the Commonwealth's witnesses. Since the latters' testimony was an attempt to totally discredit appellant's case, appellant had a right to introduce evidence to meet it. *Schoen v. Elsasser,* 315 Pa. 65, 172 A. 301 (1934). A cautionary charge to the jury was all that was necessary to insure that it not accept this as evidence of what the condemned property was worth.

Appellant's final argument is that the Commonwealth's valuation witnesses should have been required when testifying on direct examination, to value his interest separately from the Porters' interest and should not have been permitted to rely on the "bonus value" approach. Any error in not requiring the Commonwealth's witnesses to testify separately as to any value assigned to appellant's interest was cured when appellant, on cross-examination of these witnesses, elicited testimony that in their opinion his interest had no value. We need not determine whether the "bonus value" approach is applicable in this type of situation since the record fails to disclose whether the Commonwealth's witnesses relied on this theory to arrive at their damage figure.[3]

[2] One of the Commonwealth's valuation witnesses put no value on appellant's interest. The other valuation witness originally assigned no value to appellant's interest but later testified that the fair market value was $50.00 before condemnation.

[3] The bonus value is the difference, if any, between the fair market rental value and the contract rent. If there is no bonus value then a condemned lessee has not been damaged. *Pittsburgh Outdoor Advertising Corporation Appeal,* 440 Pa. 321, 272 A. 2d 163 (1970). The only substantial reference to "bonus value" is the following redirect examination of one of the Commonwealth's valua-

The order of the Commonwealth Court is reversed and a new trial is granted.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I concur with the majority except as to the admissibility of appellant's rebuttal evidence of the royalty payments. I dissent from the determination that the amount of the royalty payments should be admissible.

The appellant objects that he was not permitted to introduce evidence showing that he had paid royalties to fee owners of other tracts in the assemblage. In one case the amount was in excess of $50,000 and in another case in excess of $100,000. The appellant's theory was that this testimony should have been permitted in rebuttal to Commonwealth valuation witnesses who placed no value on the appellant's property interests. I fail to see, however, how this evidence was probative on the value of the appellant's property interest. The payments made by the appellant are the cost of doing business as an established limestone processing opera-

tion witnesses: "Q. Mr. Greene, is five cents a ton the going rate for limestone in that area? A. Five, six cents I think. Q. Do you consider this lease had any bonus value? A. No, sir. MR. DEMPSEY: I object to this line of inquiry. As to bonus value, it just is not a part of a mineral lease, Your Honor. THE COURT: You can straighten it up on cross-examination, Mr. Dempsey. Q. Mr. Greene, would you explain what bonus value is? A. Well, if you are renting a piece of property, you have someone approach you to sublet it, you can rent it for more money that you are paying in rent; the difference is a bonus. Q. In your opinion, based upon your knowledge of real estate values in this area, could Mr. Sechan have obtained other limestone leases for five cents per ton royalty? MR. DEMPSEY: I object. This is a royalty situation and not a typical lease situation; not merely the possession, but the right to consume and reconsume and this is not a bonus situation. I object to this line of questions. THE COURT: Sustained." The Commonwealth's witnesses did not state and were never asked whether they relied on the "bonus value" approach.

tion. Such payments may have been relevant in rebuttal to evidence concerning the value of the Porter interest because the Porters would receive such payments as income. The value of the Porter interest, however, is no longer in this proceeding. They have not filed an appeal and the value of their interest would not be involved in further proceedings in this case. Thus, the evidence of the royalty payments will not be relevant and should not be admissible in a new trial.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. In a prior decision, *Porter v. Commonwealth*, 419 Pa. 596, 215 A.2d 646 (1966), this Court determined that the interests of both Porter and Sechan had to be tried in a single proceeding. The majority today holds that reversible error was committed when testimony unquestionably relevant to Porter's interest (but not directly to Sechan's) was admitted in that proceeding.

In my judgment, the evidence was properly before the tribunal. As a general rule, "evidence is admissible if it is competent for any purpose . . . ." *Morse Boulger Destructor Co. v. Aroni*, 376 Pa. 57, 65, 101 A.2d 705, 709 (1954). I am therefore in agreement with Judge ROGERS of the Commonwealth Court that "[t]his holding overlooks the fact that *at the trial* the issues were not simply that of the apportionment due the appellant for his right to extract minerals, but also that of the total amount of damages for the property (required by the code to be fixed by the jury) and the portion of those damages properly due the Porters. The testimony as to sales of properties comparable to the Porter property was relevant to both of these issues and therefore clearly admissible in this trial." *Sechan Limestone v. Commonwealth*, 4 Pa. Commonwealth Ct. 621, 625, 288 A.2d 553, 554 (1972) (opinion of Judge ROGERS in Support of Affirmance, joined by

472

Bowman, P. J. and Wilkinson, J.) (emphasis in the original; footnote omitted). Sechan could have requested a limiting instruction. Counsel neither asked for such an instruction nor objected to the judge's charge. Consequently, the present claim of error has not been preserved for appellate review. *Bizich v. Sears, Roebuck & Co.*, 391 Pa. 640, 139 A.2d 663 (1958); Pa. R. C. P. 227(b); see *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 145-46, 302 A.2d 347, 352 (1973).

Moreover, in my view the rebuttal evidence relative to royalty payments was properly excluded by the trial judge. See *Werner v. Commonwealth*, 432 Pa. 280, 247 A.2d 444 (1968); *Sgarlat Estate v. Commonwealth*, 398 Pa. 406, 158 A.2d 541, *cert. denied*, 364 U.S. 817, 81 S. Ct. 49 (1960); *Whitenight v. Commonwealth*, 1 Pa. Commonwealth Ct. 144, 273 A.2d 752 (1971).

The order of the Commonwealth Court should be affirmed, and I dissent from the Court's refusal to do so.

Mr. Justice Nix joins in this dissenting opinion.