Commonwealth of Pennsylvania, Appellant, *v.* W. D. Upholzer and Kathleen E. Upholzer, his wife, Appellees.

Argued December 6, 1974, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

104

*John W. Pollins, III,* with him *Hammer and Pollins, Robert Lesko,* Assistant Attorney General and *Israel Packel,* Attorney General, for appellant.

*John N. Scales,* with him *Scales and Shaw,* P. *Louis DeRose, III,* and *Reginald L. Pawlowski,* for appellees.

OPINION BY JUDGE MENCER, March 24, 1975:

On March 5, 1969, the Commonwealth of Pennsylvania (Commonwealth) filed a declaration of taking to effect a condemnation of 319.21 acres in Fairfield Township, Westmoreland County. This acreage was owned by W. D. Upholzer and Kathleen E. Upholzer (landowners). Subsequently, the Commonwealth became aware that it owned a portion of the 319.21 acres and, after some dispute, it was stipulated by counsel that the acreage involved in this condemnation was 276.26 acres. On the petition of the Commonwealth, a board of viewers was appointed, and it awarded damages of $60,000 to the landowners.

The landowners appealed this award to the Court of Common Pleas of Westmoreland County, and a nonjury trial was conducted before President Judge DAVID H. WEISS, who viewed the property and found a verdict in favor of the landowners in the amount of $110,504.[1] The

---

1. Two experts on behalf of the landowners presented damage valuation opinions relative to the condemned property. One valuation was $175,000 and the other $170,000. In addition, the landowner, W. D. Upholzer, testified that the damages totaled $190,000. The two valuation experts for the Commonwealth found damages of $49,000 and $41,500.

Commonwealth filed exceptions to the verdict which were dismissed by the court en banc on March 21, 1973. Judgment was entered on the verdict and the Commonwealth filed its appeal to this Court.

On August 29, 1973, we made a limited remand to the lower court for the purposes of resolution of the questions pertaining to delay and detention damages. Further hearings were held on September 21, 1973 and February 15, 1974, followed by orders of May 3, 1974 awarding special damages to the landowners for moving expenses, replacement housing expenses, and reimbursement of fees, in the amount of $1,489.50, and awarding delay compensation on $86,904 at 6 percent per annum from March 3, 1969[2] to October 13, 1972 and on $50,504 from October 13, 1972 until such time as the award is paid in full. The correctness of these orders is also before us on this appeal.

The Commonwealth advances seventeen arguments in support of its overall contention that the lower court's verdict and orders should be set aside and a new trial granted. Although we have carefully considered each argument made by the Commonwealth, we conclude that only those directed toward the award of delay compensation have merit. Therefore, we will discuss briefly only those arguments of some consequence.

The Commonwealth asserts that the expert valuation witnesses who testified on behalf of the landowners incorrectly based their opinions of value on a speculative future use of the condemned property. The market value of condemned property need not be measured in terms of the existing use of that land. However, recovery based upon a nonexisting use may not be based upon remote chances or future possibilities. *Stoner v. Metropolitan Edison Company*, 439 Pa. 333, 266 A. 2d 718 (1970).

---

2. The declaration of taking was filed March 5, 1969, but the lower court has throughout the proceedings considered March 3, 1969 as the date of condemnation.

To prove a highest and best use, the landowner must establish that the land in question is physically adaptable to such use and that there is a need for such use in the area, which need is reflected in the public market for the property at the time of the condemnation. *Shillito v. Metropolitan Edison Company*, 434 Pa. 172, 252 A. 2d 650 (1969).

Keeping these principles in mind, we have examined the record and have satisfied ourselves that the evidence presented was sufficient to persuade the lower court that a buyer, at the time of condemnation, would have been influenced by the likely impending development of the property for residential purposes (second homes and vacation dwellings) and recreational uses.

The property here was in the form of a rectangle, with the dimensions of 2700 feet by 4300 feet, located at the top of the Laurel Highlands with a topography sufficiently level to encourage building. Electricity and gas were available to the property, and nine springs thereon assured a water supply of high quality. The property was in timber and was strategically located in regard to roads, proximity to recreational areas and population density. The landowners' witnesses expressed their opinions as to valuation based on detailed considerations of the suitability and adaptability of the property and a need for it to fulfill existing demand for recreational and vacation or summer residential uses as of the time of condemnation.

The Commonwealth also argues strenuously that it was serious error to permit a witness for the landowners to testify concerning the value of the timber on the condemned property without ten days' written notice of said testimony having been given to the Commonwealth.

Section 703(2) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P. L. 84, *as amended,* 26 P.S. §1—703(2) (Supp. 1974-75), requires the party calling a valuation expert "who has not previously testi-

fied before the viewers" to disclose his name to the opposing party at least ten days prior to trial, along with a statement of his valuation of the condemned property.

We agree with the lower court's conclusion that this section of the Code "does not apply to a witness, like [the landowners'] forester, who did not testify or even offer testimony on either of these questions [valuation of the property before and after the condemnation and the highest and best use of the property before the condemnation]."

The timber witness, whose testimony is challenged, was asked to place a value on the timber found on the condemned property. He replied that in his opinion it was $134.84 per acre. The Commonwealth objected to this testimony, but, before a ruling was made on the objection, the attorney for the Commonwealth stated that "if he has a value to the total acres of timber, we'll allow him to testify to that." The witness then replied that "[i]t would be in the neighborhood of 27 [to] 28 thousand dollars."[3] We view that the Commonwealth waived its objection to this testimony and cannot be heard now to complain relative to such testimony. *Cf. Werner v. Department of Highways*, 432 Pa. 280, 247 A. 2d 444 (1968); *Whitenight v. Department of Highways*, 1 Pa. Commonwealth Ct. 144, 273 A. 2d 752 (1971).

The Commonwealth further contends that the lower court's verdict was defective and incomplete in that it preserved to the landowners the right of replacement and moving expenses "as will be determined between the [landowners] and the [Commonwealth] at a future time." Two factors quickly dispose of this issue. First, when, prior to the verdict, the lower court was discussing with counsel the form of the verdict, the attorney for the

---

3. A multiplication of the number of acres (276.26) by the amount of $134.84 would result in a total of $37,250.90. This amount is approximately $10,000 more than the value testified to by the witness in question.

Commonwealth stated the following: "I think at this time it would be unfair of the Commonwealth to insist on estimates, so I think your Honor in entering a verdict, we would preserve the right." The lower court immediately replied, "The rights of moving expenses and replacement?" and stated, "In the verdict we'll preserve the rights for replacement and moving expenses; we'll preserve that," to which Commonwealth's attorney replied, "Right." Secondly, at the hearing held on February 15, 1974, the lower court entertained testimony on the items of special damages which it awarded by order of May 3, 1974. Thus, any incompleteness in the lower court's action was cured and is no longer a proper basis of trial error.

However, we do find merit in the Commonwealth's assertion that the lower court did err in awarding the landowners delay compensation prior to October 15, 1973. Section 611 of the Code, 26 P.S. §1—611 (Supp. 1974-75), provides as follows:

"The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation: Provided, however, that no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but

shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict."

The lower court concluded that of the 276.26 acres condemned, 5 acres were devoted to the landowners' dwelling house and curtilage and 271.26 acres were woodlands and not in the possession of the landowners after March 3, 1969, the date of the condemnation, and that possession was not required to effectuate the condemnation thereof. The lower court further determined the fair market value of the 5 acres to be $23,600 and made an award of delay compensation that reflected the Commonwealth's payment into court of $60,000 on October 13, 1972 and the landowners' relinquishing possession of the 5 acres on October 15, 1973.

Applying our holding in *Govatos v. Redevelopment Authority of the County of Montgomery*, 11 Pa. Commonwealth Ct. 529, 314 A. 2d 536 (1974), to the facts of the instant case, we must conclude that the lower court erred in making its award of delay compensation here. As we stated in *Govatos*, Section 611 "addresses itself specifically to the subject of delay compensation [and] in the first sentence thereof clearly and unequivocally denies a condemnee any right to delay compensation while he remains in possession. Later portions of this same section then recognize and make provision for the *out-of-ordinary or exceptional situation* in which a condemnation not initiated by a declaration of taking under the Code—de facto or otherwise—legally exists but possession by the condemnor is not a necessary ingredient to produce that result as a matter of law." 11 Pa. Commonwealth Ct. at 533, 314 A. 2d at 538-39 (emphasis supplied).

The lower court did not find, nor could it have so found, that the condemnation here was an out-of-ordinary or exceptional situation since in the instant case the

condemnation *was initiated* by a declaration under the Code. The reasoning of the lower court that the 271.26 acres of woodland will be devoted by the Commonwealth to its "preservation in its natural state" under the Commonwealth's Project 70 Land Acquisition Program with no resulting change of condition does not fashion a condemnation "such that possession is not required to effectuate it."

The landowners question here the constitutionality of Section 611 of the Code since, they assert, its effect is to deprive the property owner of a constitutional right to receive just compensation for delay in payment in exchange for a lesser benefit; namely, that of being relieved from paying rent or other charges for use and occupancy of the condemned property. Equally applicable to, and dispositive of, this issue is our holding in *Govatos v. Redevelopment Authority of the County of Montgomery, supra* at 534, 314 A. 2d at 539, which we ex-expressed as follows:

"[A]ppellant also asserts an impairment of her constitutionally protected property rights in a statutory denial of delay compensation to her while she remains in possession after the declaration of taking and before the condemnor's right of possession becomes operative under Section 407 or is invoked pursuant to said section. While delay compensation has been repeatedly declared by case law to be a necessary ingredient of 'just compensation' required to be paid to property owners upon the exercise of the power of eminent domain, appellant has pointed to no decisions and we have found none which so hold where the initiation of the condemnation does not carry with it a right of possession, whether or not exercised by the condemnor. As noted above, the Code affords no right of possession in the condemnor at the time a condemnation is effected upon the filing of a declaration of taking and the constitutional right to delay

compensation is equated to condemnor's right of possession or, under exceptional circumstances mentioned above, to the date of condemnation. This statutory scheme in our opinion fully protects appellant's constitutional rights to delay compensation as announced by decisional law."

Judgment affirmed. Orders of May 3, 1974 affirmed, with the exception of that portion pertaining to delay compensation on $86,904 at 6 percent per annum from March 3, 1969 to October 13, 1972 and that portion pertaining to delay compensation on $50,504 *during the period of October 13, 1972 to October 15, 1973,* which portions are set aside and stricken.