## Hay v. Commonwealth

*Nathaniel A. Barbera*, for petitioners.
*Lisle A. Zehner*, for respondent.

COFFROTH, *P.J.*, August 21, 1980—This eminent domain case is before us on the condemnees' petition to compel condemnor to pay delay compensation. The petition raises two alternative questions:

(1) Whether delay compensation is payable for the period of time during which the condemnees are in possession of the condemned property, farm land but whose right of possession, use and enjoyment of the property is materially restricted by condemnation and the consequent transfer to the condemnor of the right of possession; and

(2) Whether the conclusion in the viewers' report that damages for delay shall be calculated from the date of the declaration of taking is res judicata where the condemnor in its appeal to the common pleas court made no objection to that conclusion.

## HISTORY OF THE CASE

The Pennsylvania Department of Transportation, condemnor, filed on November 26, 1975 a declaration of taking of a portion of the farm of plaintiffs, condemnees. The issue of just compensation went to viewers who awarded $153,000 and stated in their report that: "Damages for delay shall be

calculated from the date of the declaration of taking, which is November 26, 1975."

The condemnor filed an appeal to the court "from the viewers' report in the above entitled case filed November 15, 1978 to no. 258, Civil Term 1978, in accordance with the provisions of Act No. 6, Special Sessions, dated June 22, 1964, Article VIII, §516 [Eminent Domain Code]" and demanded a jury trial. The appeal contains no specific objection to the report.

In the jury trial on appeal, on September 19, 1979, the jury rendered a general verdict only for $205,000 without any specific finding, and no specific finding was requested. On October 16, 1979, on motion of condemnees' counsel the trial judge (Shaulis, J.) ordered the prothonotary to enter judgment on the verdict "in the amount of $205,000 plus delay compensation, interest and costs as provided by law." In the order, apparently prepared by and submitted ex parte to the court by counsel for condemnees, it is stated that: "Plaintiffs' counsel hereby certifies to the Court that a copy of said Order and entry of judgment on the verdict will be forwarded to . . ." counsel for the condemnor, and apparently that was done without further objection from the condemnor.

On February 27, 1976, the condemnor had paid to the condemnees the sum of $40,790 and on January 2, 1979 the sum of $33,910 as estimated just compensation. On March 20, 1890, the condemnor delivered to counsel for the condemnees a check for $130,800 the balance of just compensation due according to the jury's verdict, but without payment of delay damages, which was accepted as a payment on account only, leaving for later determination in this proceeding the issue of delay compensation.

The parties disagreed upon the extent of the condemnees' possession and the extent to which their use and enjoyment of the premjdises may have been restricted or affected by the condemnation, and no evidence was presented to resolve that difference.

## DISCUSSION

Condemnees' Possession:

The condemnees contend that although actual possession of the property during the period in question was not taken by or relinquished to the condemnor, and technically or constructively remained in the condemnees, the condemnor had the right of possession by virtue of the taking which so materially restricted the condemnees' beneficial use of the property (farm land which the condemnees argue could not be used for planting, cultivating and harvesting a regular crop), as to deprive the condemnees of possession, and that delay compensation is therefore payable during such period.

Delay compensation is governed by section 611 of the Eminent Domain Code of June 22, 1964, P.L. 84, hereinafter called code, 26 P.S. §1-611, which provides as follows:

The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate

it, then delay compensation shall be paid from the date of condemnation: Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict."[1]

It is apparent that section 611 contains a flat prohibition upon payment of delay compensation for any period while the condemnee "remains in possession" and an unconditional mandate that delay compensation shall be paid "from the date of relinquishment of possession." The code thus recognizes no grades or degrees of use and enjoyment from possession by the condemnee; the facts of possession alone, and its relinquishment, appear to be an absolute determinant of the payability of delay compensation, notwithstanding that the mere fact of condemnation can and often does create lim-

---

1. Section 611's provision for payment of delay compensation from the date of condemnation "if the condemnation is such that possession is not required to effectuate it" has been held to mean that if the condemnation will eventually require possession by the condemnor then possession is necessary to effectuate it, as is true here of highway construction. See: Bucks County v. 800 Acres, 32 Pa. Commonwealth Ct. 448, 379 A 2d 903 (1977); Govatos v. Montgomery County Authority, 11 Pa. Commonwealth Ct. 529, 314 A. 2d 536 (1974).

Section 611 apparently does not apply to State Mining Commission proceedings under the Act of 1933, P.L. 1409, sec. 1, as amended, 52 P.S. § 1501: Coyer v. Department, 43 D. & C. 2d 317 (1967).

itations upon the profitable aspects of possession and causes pecuniary loss in fact without bringing about a transfer or relinquishment of possession, and the effect of section 611's mandates may in some cases leave such losses uncompensated.

Since a condemnee's right to compensation for property taken for public use is a *constitutional* right, and since the constitution mandates that the amount of compensation paid be *just,* it follows that to the extent a statute disallows *just compensation* it is unconstitutional.[1a] Although the condemnees' argument is not couched in terms of unconstitutionality, that is its necessary thrust, otherwise it fails by the terms of the Code section 611.

The basic theory of just compensation for private property taken for a public purpose is that the compensation is and must be the economic equivalent of the property; in order to be an equivalence, the compensation must equal the property in fair market value Code § 602-3 and must be paid to the condemnee at the time the property is taken or else include compensation for delay in payment. As stated in Whitcomb v. Philadelphia, 264 Pa. 277, 284, 107 Atl. 765 (1919):

"When land is taken under the power of eminent domain, the owner thereof acquires the right to its value immediately upon appropriation. Until that value has been definitely ascertained, it is called damages, not a debt due; but when ascertained it relates back to the time of taking, and the owner is entitled to compensation for delay in its payment, unless just cause be shown to the contrary: Wayne v. Penna. R. R. Co., 231 Pa. 512; Hoffman v. Phila.,

---

1a. The determination of the measure of just compensation is a judicial not a legislative, question: U.S. v. Sioux Nation, 448 U.S. 371, 65 L.Ed. 2d 844 (1980).

250 Pa. 1; and 261 Pa. 473. This compensation, like all other charges for wrongfully withholding money, is measured by an interest rate recoverable as damages."

Delay damages is compensation in the nature of interest for the use of another's money, just as rent is compensation for the use of another's property; and when the government by virtue of having taken the ownership and use of property owes to the owner the equivalent value in money but retains the use of money, interest or damages for the period of delay in payment must be paid. As stated in Phelps v. U.S., 274 U.S. 341, 343, 344, 71 L.Ed. 1083, 1085 (1927):

"Under the Fifth Amendment, plaintiffs were entitled to just compensation; and . . . the claim . . . [for delay compensation] is one founded on the constitution. . . . The government's obligation is to put the owners in as good position pecuniarily as if the use of their property had not been taken. They are entitled to have the full equivalent of the value of such use at the time of the taking paid contemporaneously with the taking. As such payment has not been made, petitioner is entitled to the additional amount [delay compensation] claimed."

The theory of Code section 611 is that as the condemned property and the lump sum money award of market value in eminent domain proceedings are economic equivalents, so are possession of the property and possession of the award money economic equivalents; and that equitably the condemnee should not have both possession of the property and possession of the money (or its equivalent in delay damages) at the same time. As stated in Comment to section 611: "The reason for this is that while the condemnee is in possession, the con-

demnee is not building up damages for delay and the condemnor is not accruing liability for delay damages."

So long as the condemnee has full post-condemnation possessory use and enjoyment of the property, it is concedely inequitable to pay him also interest or delay damages on the property value. But in actual experience, the property owner's post-condemnation possession is often not "full," but is so substantially limited by the very fact of condemnation and its consequent transfer to the condemnor of the right of possession, that the condemnee in possession is not nearly in as good a position as he would be if he had either full possessory enjoyment or its economic equivalent of delay damages, and pre-Code decisions have recognized this. Thus, in Pattison v. Buffalo, Rochester and Pittsburgh Railway Company, 268 Pa. 555, 556, 112 Atl. 101 (1920), the court said: "When land is appropriated under the power of eminent domain, the owner's right to any use of the land ceases."[2] The court further pointed out that the worth of condemnee's post-condemnation occupany is not necessarily the equivalent of delay compensation, at 558-9:

"The compensation for delay in paying this damage, or the value of the use of the money adjudged to be due, would be ordinary interest on the entire amount during the period of delay; it might or

_____

2. Under section 402(a) of the code after the taking "the condemnor shall be entitled to possession as provided in §407." Section 407 states: "The condemnor, after [filing the] declaration of taking, shall be entitled to possession or right of entry upon payment of, or a written offer to pay to the condemnee, the amount of just compensation as estimated by the condemnor."

might not be equal to the net value of the rents, issues and profits secured from the land condemned during the same period . . . [W]hen a claim is made for delay in payment, if plaintiff occupies the property the damages [for delay] must be reduced by the net rental value thereof during such period."

The court further delineated the reasons for this approach, as follows at 557:

"If, after the paper taking, the person continues in actual occupation of the land, receiving therefrom rents, issues and profits, it would be inequitable for him to have this benefit and full compensation for delay in payment. While such occupation is permissive, the land cannot be built upon, improved or sold; and while possession and enjoyment is to some extent interfered with, as it cannot be safely rented for any fixed period, or if the occupant sows grain he cannot be sure he will reap his harvest, yet when the land is occupied and used, all these considerations are but a restriction on the use of the property and only go to lessen the benefit which might otherwise be derived from a use consistent with a freehold estate. The net income is, nevertheless, a benefit which the person receives and it is no more than equitable that its value should be ascertained by the jury and deducted from the entire compensation for delay." See also Pennsylvania Company v. Philadelphia, 262 Pa. 439, 105 Atl. 630 (1918).

Thus the pre-Code rule was that the condemnee had a right to receive compensation in the nature of interest as damages for delay in payment from the date of condemnation, unless just cause is shown to the contrary, Whitcomb v. Philadelphia, supra 284; such right to delay compensation is a prima facie

right and the burden is upon the condemnor to show just cause for denying or reducing it in whole or in part, 13 P.L.E., Eminent Domain §67; the right is constitutional in stature and is an element of "just compensation," Fidelity-Philadelphia Trust v. Com., 352 Pa. 143, 145, 42 A. 2d 585 (1945), the "just cause" which will justify denial of delay compensation in whole or in part might consist of conduct on the part of the condemnee which was responsible for the delay, Fidelity-Philadelphia Trust v. Com., supra, 145, or receipt of value by the condemnee from post-condemnation possession which might be credited against the delay compensation, Hughes v. Com., 414 Pa. 606, 609, 202 A. 2d 15 (1964) and Whitcomb v. Philadelphia, supra, 559.

In that manner, the courts carried out the constitutional mandate of *just* compensation in cases where the condemnee retained possession of the property after condemnation. Code section 611 eliminates inquiry into the value to the condemnee of his possession and adjustment by offset, and instead imposes a rigid mechanistic rule prohibiting delay compensation whenever the condemnee has any sort of possession, and in an attempt to equalize the denial also provides, "nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee."[3]

But that equalization may be theoretical only; it permits a substantial deprivation of property with-

3. But, see Pittsburgh Urban Authority v. Cleban, 216 Pa. Superior Ct. 269, 264 A. 2d 187 (1970), allowing rental to the condemnor where no delay compensation is payable. Compare Nanticoke v. Luzerne County Authority, 41 Pa. Commonwealth Ct. 74, 399 A. 2d 429 (1979).

out payment of just compensation in cases where delay compensation would substantially exceed the value of the possession, which strongly suggests unconstitutionality of Code section 611 where such inequity exists. As stated in U.S. v. Virginia, 365 U.S. 624, 631, 5 L.Ed. 2d 838, 846 (1961): "'The word "just" in the Fifth Amendment evokes ideas of "fairness" and "equity" . . .'"[4] Snitzer, Pennsylvania Eminent Domain (Bisel 1965), section 611-2.1, points out that where the condemnee's benefit from possession of the property after condemnation is substantially less in value than delay compensation, and no adjustment is allowed in accordance with the pre-Code rule, ". . . serious questions of constitutionality arise," page 359, and that page 358: "Since the allowance of detention damages is a matter of constitutional right, there is doubt whether this section [611] could prohibit a condemnee from receiving what is constitutionally due." Nevertheless, the Commonwealth Court in Govatos v. Montgomery County Authority, 11 Pa. Commonwealth Ct. 529, 314 A. 2d 536 (1974), upheld the constitutionality of section 611 without indicating any concern for or awareness of the problem here being discussed. As stated by Judge Shaulis in Gray v. Com., 31 Somerset 187, 192 (1975):

"The Commonwealth Court's decision can be

---

4. The Fifth Amendment of the United States Constitution provides in part that: ". . . . nor shall private property be taken for public use, without just compensation." Art. 1, § 10, of the Pennsylvania Constitution states in part that: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation first being made or secured." See also Pennsylvania Constitution, Art. 10, §4, requiring municipal and other corporations to "make just compensation for property taken, injured or destroyed."

The Fifth Amendment is applicable to the states: Com. v. Sarver (No. 1), 36 Somerset 180, 183, fn. [4] (1977).

readily criticized for its inadequate handling of the constitutional claim. As Snitzer, supra, points out, a landowner has a constitutional right to delay compensation on the value of the property from the date of condemnation. To say that in situations where the landowner remains in possession until the time the Commonwealth perfects its right of possession, the delay compensation will simply offset the rental value is to ignore ecnomic reality. If 6% of the value of the property is greater than rental value, then clearly the landowner has been denied his constitutional right to delay damages on the value of the property. However, this Court is constrained to follow the law of the appellate courts which have expressly stated that there can be no delay compensation during the period the landowner remains in possession and prior to the time the Commonwealth perfects its right of possession under section 407."

In this case, we do not need to determine whether we would feel the same constraint to follow section 611 in a case of inequity in denying delay compensation to a condemnee who has virtually a valueless possession as a result of the condemnation. None of the post-Code decisions so far clearly addresses that problem. Compare Com. v. Upholzer, 18 Pa. Commonwealth Ct. 102, 334 A. 2d 812 (1975). See also: 29A C.J.S., Eminent Domain §176(2); 96 A.L.R. 150, section VIII; Anno., 36 A.L.R. 2d 458, §55. The record here does not factually support the arguments of counsel for the condemnees alleging inequity. Merely because the condemnor has the right of possession under code section 407 does not ipso facto establish an inequitable loss. We think that section 611 at least establishes a prima facie rule that the condemnee's possession prohibits delay compensation absent special factors which require adjustment in order to

provide just compensation, and thereby reverses the burden of proof previously placed on the condemnor to show such special factors and instead places it upon the condemnee, just as he has the burden of proving all other damages in eminent domain: 13 P.L.E., Eminent Domain § 135.

We reject the condemnees' first contention.

Res Judicata:

The condemnees contend that since the condemnor-appellant in its appeal from the report of viewers made no specific objection to the viewers' determination that delay damages shall be calculated from the date of condemnation, that determination is conclusive upon the parties as res judicata and cannot now be litigated. We agree that the issue is res judicata, but our reasoning differs somewhat from condemnees'.

Code section 511 requires the viewers to determine the date from which delay damages are to be calculated, as follows:

"The viewers shall file a report which shall include in brief and concise paragraph form:
(1). . . .
(5) A schedule of damages awarded and benefits assessed, to and by whom payable, and for which property, separately stated as follows: general damages, moving and removal expenses, business dislocation damages and other items of special damages authorized by this act, *and the date from which damages for delay shall be calculated.*
(10). . . ." (Emphasis supplied.)

Although the code does not require a specific factual finding of the date possession was relinquished, but only a conclusory finding of the date from which delay compensation is payable, and since the latter date must be the date of relin-

quishment of possession it is obvious that the date determined for the calculation is and must also be the date of relinquishment. This point was addressed by Judge MacPhail of Adams County Court of Common Pleas (now of Commonwealth Court) in Stradling v. East Berlin Borough, 74 D. & C. 2d 473, 476, 477 (1976),

"It is true that the viewers' report here does not state when or whether the possession of the real estate was relinquished by the condemnees; however, the report does state that delay compensation shall be paid from March 11, 1968, and says specifically that the board 'set March 11, 1968, as the date from which damages for delay shall be calculated . . .' It seems obvious to us that that finding fixes the date of relinquishment as well as the date from which delay compensation shall be paid. Since the board is not required by the statute to fix a date of relinquishment of possession, but may only award damages for delay compensation from the date of relinquishment of possession, it is apparent that the board here has followed the law and if either party is aggrieved, its remedy is an appeal."

In this case the viewers' report complies with Code section 511(5) supra. Such a determination is both a finding of fact of the date of relinquishment of possession (where possession is necessary to effectuate the condemnation) and a conclusion of law that delay compensation is payable from that date.[5] We cannot credit the contention of Com-

---

5. In a highway condemnation, the viewers' determination respecting delay compensation could not possibly be construed as meaning that possession is not necessary to effectuate the condemnation (in which event relinquishment of possession is not required and is irrelevant to delay compensation under the terms of Code section 611, supra). See footnote [1], supra.

monwealth counsel that the viewers' determination under discussion is not a formal finding and conclusion, merely because it is not so labeled in the report and set forth in a numbered paragraph. There is nothing in the statute or case law so requiring, nor should there be. Compare Pa.R.C.P. 1517 and 5 Goodrich-Amram 2d §1517:3 and :5 to the effect that findings and conclusions in an equity adjudication may be in narrative form and need not be in separate numbered paragraphs.

The condemnees' contention that the viewers' finding and conclusion as to the calculation date for delay compensation must be specifically objected to is more troublesome. That contention is based on the language of Code §§515 and 516, 26 P.S. §§1-515 and 1-516. Section 515 provides in relevant part as follows:

"Any party aggrieved by the decision of the viewers may appeal to the court of common pleas. The appeal shall raise all objections of law or fact to the viewers' report. The appeal shall be signed by the appellant or his attorney or his agent and no verification shall be required. Any award of damages or assessment of benefits, as the case may be, as to which no appeal is taken, shall become final as of course and shall constitute a final judgment."

Section 516 provides in relevant part as follows:

"(a) The appeal shall set forth: . . . (4) Objections, if any, to the viewers' report, other than to the amount of the award. . . ."

Our immediate question is whether the viewers' determination of the date for calculation of delay compensation is part of the "amount of the award" within the meaning of section 516(a(4), supra.

The language of Code section 516(a)(4) is not self-explanatory; in fact, standing alone and di-

vorced from its history it is ambiguous. The phrase "amount of the award" can refer to the lump sum award only, upon which delay compensation is calculated, analogous to principal; or it can refer to the total amount of compensation awarded, principal and interest (delay compensation). In making a choice we must go beyond the language of the section to a consideration of the elements specified in section 1921(c) of he Statutory Construction Act of 1972, 1 Pa.C.S.A. 1921(c) which provides:

" (c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: (1) The occasion and necessity for the statute. (2) The circumstances under which it was enacted. (3) The mischief to be remedied. (4) The object to be attained. (5) The former law, if any, including other statutes upon the same or similar subjects. (6) The consequences of a particular interpretation. (7) The contemporaneous legislative history. (8) Legislative and administrative interpretations of such statute."

In substance, delay compensation is part of the "just compensation" constitutionally mandated as discussed in the first part of this opinion. As stated in Fidelity-Philadelphia v. Com., supra, 145: "Loss of the use of the property or its proceeds because of delay in payment is an element of damage the same as is the value of the appropriated property." Therefore, no matter what the *form* of the viewers' award of just compensation, its calculated total of both principal and interest (delay damages) is in *substance* the "amount of the award." This reality was clearly recognized under the preferred pre-Code practice in which the viewers calculated the amount of delay compensation payable if any,

added it to the other principal damages found payable, and made an "award" for a single lump sum of just compensation payable; the same procedure applied to the jury on appeal; then interest was payable on that amount from the date of the award or the jury's verdict to the date of payment. See: Opening of Parkway, 267 Pa. 219, 110 Atl. 144 (1920); Mast v. Lancaster County, 308 Pa. 381, 162 Atl. 288 (1932); Lackawanna v. Lackawanna, 299 Pa. 503, 507-8, 149 Atl. 702 (1930); Lichtenstein v. Pennsylvania Turnpike Commission, 398 Pa. 415, 158 A. 2d 461, (1959); Wolf v. Com., 403 Pa. 499, 170 A. 2d 557 (1961); Kelly v. Allegheny County Authority, 411 Pa. 210, 191 A. 2d 393 (1963); Treser v. General State Authority, 190 Pa. Superior Ct. 490, 154 A. 2d 325 (1959); 19 P.L.E., Interest and Usury § 5. In post-viewers proceedings, questions of law requiring preliminary decision by the court were raised by "exceptions" to the viewers' report, and questions of fact and damages for jury determination in a de novo trial were raised separately by filing an "appeal". See: Allentown's Appeal, 121 Pa. Superior Ct. 352 183 Atl. 360 (1936); Comment to Code section 516. Since the payability and amount of delay compensation rested upon a determination of factual questions, that determination had to be made by the fact finder in the de novo trial, not preliminarily by the court. See: Mott v. Com., 417 Pa. 426, 431, 207 A. 2d 872 (1965); Provident Life v. Philadelphia, 222 Pa. 78 (1902); Rothwell v. California, 21 Pa. Superior Ct. 234 (1902); 13 P.L.E., Eminent Domain §67. Accordingly, a challenge to the viewers' award respecting delay compensation could be raised only on appeal, not by exceptions. Com. v. Haaf, 36 D. & C. 2d 354 (1964). Even in cases where the preferred practice was not followed, and the viewers or jury sepa-

rately stated their finding as to delay compensation instead of calculating it and adding it to their lump sum principal award or verdict, the courts regarded the error as a "technical defect", Mast v. Lancaster County, supra, 383, and the "award" as including both the principal and delay compensation. As stated in Opening of Parkway, supra, " . . . the method pursued does not change the real character of the award . . ." 224. In the latter case the viewers awarded a lump sum plus "compensation for delay in payment of the same at the rate of 6 percent per annum from December 9, 1909" of which the court said (223): "This adjudication of damages, while put in dual form, is really a single award. . ." It is quite clear, therefore, that under pre-Code theory and practice, delay compensation was in substance, and usually in form, part of the "amount of the award".

Code section 611, quoted in the first part of this opinion, alters the pre-Code practice just discussed; for convenience, the relevant portion of the section is repeated here: "Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict."

The objective of this change, as the comment to the section states, is to eliminate payment of interest on delay compensation (interest on interest) as the former practice allowed by including the delay compensation in the award or verdict and then allowing interest on the whole until paid. Thus, the code abolishes the single lump sum form of award or verdict previously preferred; in effect, the code adopts the "dual form" of award or verdict which

"is really a single award" of just compensation as pointed out in Opening Of Parkway, quoted supra, to include both the principal part of the award and interest thereon in the form of delay compensation (see Opening of Parkway, supra, headnote 4(a)). Thus, delay compensation is still in substance and reality part of the "amount of the award".

That Code section 615 (a)(4) supra, providing for: "Objections, if any, to the viewers report, other than to the amount of the award," was not intended to regard delay compensation as outside the "amount of the award" so as to require objections to the viewers' determination of the calculation date for delay compensation in order to make that determination litigable on appeal, is further made clear by the fact that "objections" within the meaning of that section are now precisely equated with pre-Code "exceptions." See: Jennings v. Com., 38 Pa. Commonwealth Ct. 206, 395 A. 2d 582 (1978); Kellman v. Com., 24 Pa. Commonwealth Ct. 102, 354 A. 2d 583 (1976). As already stated, exceptions to the viewers' determination of delay compensation, even if separately stated in dual form, were not required in pre-Code practice: Com. v. Haaf, supra.

There is some justification for the argument of condemnees' counsel that the viewers' determination respecting payment of delay compensation is not part of the "amount of the award" in the language of Code section 611 stating that delay compensation shall not be made "part of the award or verdict," but shall be added in at the time of payment. At first blush, that language seems to distinguish delay damages from the "award". But it does not follow that delay damages are not part of "the amount of the award" as that term is used in Code §516(a)(4), supra; on the contrary, the language of 611 referred to is focusing merely on the time when

and the manner in which delay compensation is formally made part of the "amount of the award," by adding it in later when payment is made— merely a practical provision to assure that the condemnee will be fully paid, but not overpaid by receiving interest on interest as allowed by prior law. Subject only to this procedural direction in section 611 as to the time and manner of adding delay damages to the "award," such damages are in substance always part, indeed a constitutionally mandated part as previously discussed, of the "amount of the award" within the meaning of section 516(a)(4) supra. Accordingly, the amount of delay compensation as part of the award of just compensation was placed at issue by the Commonwealth's general appeal in this case, without specific objection thereto, and was, therefore, fully litigable in the de novo trial. It does not follow, however, that the viewers' determination as to delay compensation is not conclusive on the issue, as res judicata.

At the argument, Commonwealth counsel contended that this court should now, in this proceeding, find as a fact that possession of the condemned property had not been relinquished by the condemnees to the condemnor and then draw the required conclusion that delay compensation is not payable under Code section 611, thereby in effect reversing the finding to the contrary by the viewers. Condemnees counsel on the other hand, although coming perilously close to conceding at the argument that possession had not been relinquished, disputed the nature and extent of the condemnees' occupancy and stood on the viewers' determination as being res judicata. We believe that the court does not have the authority in this proceeding, in which an appeal was taken demanding a jury trial, to decide the factual question involved. The parties

have a constitutional right to have factual issues on appeal decided by the jury, not the court. See: Pa. Const. Art. I, sec. 6, P.L.E., Eminent Domain § 101. This includes all matters pertaining to issue of damages, Redevelopment Authority v. Colortone Company, 62 D. & C. 2d 474 (1972), and specifically all matters pertaining to delay damages, Provident Life v. Philadelphia, and Rothwell v. California, both supra. Compare Hineline v. General State Authority, 15 Pa. Commonwealth Ct. 44, 324 A. 2d 817 (1974).

The other theory suggested by but not clearly articulated in the Commonwealth's argument is that the condemnees had the burden of establishing the requisite facts to support their damage claim, including delay compensation, and by failing to litigate that question on appeal by producing the necessary testimony concerning their possession or lack of possession and requesting submission of the issue to the jury, resulting in a failure of the jury to make an appropriate finding of the date for calculating delay compensation, they waived any claim to such compensation. It is true that the condemnee has the burden of proof generally on the issue of damages. See: Sweeney v. Urban Redevelopment Authority, 427 Pa. 367, 235 A. 2d 143 (1967); Morrissey v. Department of Highways, 424 Pa. 87, 225 A. 2d 895 (1967); Philadelphia Authority v. United Novelty Company, 11 Pa. Commonwealth Ct. 216, 314 A. 2d 553 (1973); 13 P.L.E., Eminent Domain §§ 102 and 135. As to delay compensation, however, under pre-Code law, the condemnee was prima facie entitled to such compensation from the date of condemnation, absent proof that the condemnee was the cause of delay as where, for example, his demands were found to be exorbitant, and the burden of defeating the claim

for delay compensation rested on the condemnor: Fidelity-Philadelphia v. Com. supra; Com. v. Haaf, supra; 13 P.L.E., Eminent Domain §67. Code section 611 has made some changes respecting liability for delay compensation: delay compensation cannot be reduced or denied for fault of the condemnee in causing the delay, and it cannot be paid automatically from date of condemnation but only from date of relinquishment of possession; accordingly, the comment to section 611 states, in part, that: "This changes existing law which states that the condemnee is prima facie entitled to damages for delay except where the delay is the fault of the condemnee. . . ." But section 611 and its comment do not fix the burden of proof on the issue of date of relinquishment of possession. In our view, the code contemplates that the burden of proof on that issue rests on condemnor in the proceedings before the viewers, and that the viewers will comply with the mandate of Code section 511(5), supra, to fix the date from which damages for delay shall be calculated; but that, once that adjudication is made, although fully litigable on appeal, it is conclusive upon the parties in the appeal except to the extent the parties elect to litigate it and to have the matter decided instead by the jury whose finding of course takes precedence over that of the viewers. This view finds support in the fact that the code contains no mandate that the appeal jury make any finding of calculation date, and in the comment to section 611 (providing for post-verdict calculation and addition of delay compensation), that: "The date from which delay compensation is to be calculated will be fixed *by the viewers* in their report." (Emphasis supplied.)

The code's intent to give the viewers' finding as to the calculation date prima facie effect in the appeal

seems fair, leaving to the party desiring to contest it the duty of raising the matter in the de novo trial. Thus, the failure in the de novo trial to litigate the issue results in waiver only by the party contesting the viewers' determination, here the condemnor. Thus, the viewers' finding is res judicata upon the parties under the circumstances here present.[6]

## ORDER

Now, August 21, 1980, the petition of plaintiffs-condemnees to compel defendant-condemnor to pay delay conpensation is granted. The Commonwealth of Pennsylvania, Department of Transportation, defendant-condemnor is directed to pay to Wilson S. Hay and Nellie G. Hay, husband and wife, plaintiffs-condemnees delay compensation and interest thereon as follows:

1. From November 26, 1975 to February 27,

---

6. The contention of condemnees' counsel that the viewers' determination of delay compensation should be the subject of a specific objection if it is to be litigated on appeal has procedural merit in defining the issues and giving notice thereof in the appeal, especially since the issue of delay compensation is only an optional issue. The appeal document is the only pleading in the appeal; when filed, "the cause shall be deemed at issue," Code section 516(c).

Neverthless, no party need be surprised if the issue of delay compensation is raised on appeal, as all issues must be stated at the pretrial conference. See Upstill v. Jamesway (No. 3), 32 Somerset 123 (1976). In the instant case, no pretrial conference was held because waived by counsel (with leave of court). Since the pretrial conference is of significant value to the assigned trial judge we think the parties should not be permitted to waive it in jury cases; the conference is mandated in jury cases by local Rule R43-101.

We assume without deciding that if the issue of delay compensation is raised on appeal the condemnee will have the usual burden of proof.

1976, delay compensation on $205,000 at six percent per annum; and

2. From February 27, 1976 to January 2, 1979, delay compensation on $164,210 ($205,000 less $40,790 estimated just compensation paid) at six percent per annum; and

3. From January 2, 1979 to March 20, 1980, delay compensation on $130,300 ($164,210 less and additional $33,910 estimated just compensation paid) at six percent per annum; and

4. From March 20, 1980 to date of payment, interest on the total of paragraphs 1, 2 and 3 above of this order at six percent per annum.

Costs on the Commonwealth, Code section 519.